[Civil No. 4100.   Filed November 20, 1939.]

[95 Pac. (2d) 990.]

In the Matter of the Estate of PHIL TORREY, Deceased; VIVIAN CRAIG STEWARD, Appellant, v. HATTIE TORREY, as Executrix of the Last Will and Testament of PHIL TORREY, Deceased, Appellee.

Messrs. Moore & Romley, for Appellant.

Messrs. Lewkowitz & Wein, for Appellee.

ROSS, C. J.—This is an appeal from an order in probate approving and settling the final account of Hattie Torrey, executrix of the last will and testament of her son Phil Torrey, deceased. The appeal is by the deceased's widow, Vivian Craig Torrey, now Vivian Craig Steward.

The deceased and appellant intermarried August 8th, were divorced October 15th and remarried December 12, 1935, and were living in Phoenix, Arizona, August 16, 1936, the date of Torrey's death. Decedent left a will dated April 8, 1936, by the terms of which all of his property was devised and bequeathed to his mother, except $1 which he bequeathed to his wife. This will did not and could not dispose of the wife's one-half interest in any property belonging to the community. In his will deceased named his mother, Hattie Torrey, as his executrix, who qualified and entered upon her duties September 16, 1936. On February 13, 1937, she filed an inventory and appraisement of the assets of the estate and therein showed the appraised value to be $12,906.75, which was all listed as the separate property of the deceased.

Subsequently, in an action by appellant against the appellee and others, it was adjudged that the community was the owner of a promissory note of the Novelty Supply Company, Inc. (hereinafter referred to as the company) for $9,485.15, bearing date December 3, 1936, payable on demand. On January 21, 1938, there was filed a supplemental inventory and appraisement in which said note was listed as community property and was valued by the appraisers at its face value. In such supplemental inventory and appraisement there was an item of $6,359.52 due the Phil Torrey estate upon an open account from the company, which was returned as the separate property of the deceased. Appellant, in her objections to the final account, insisted

that appellee be required to account to her in cash for one-half of the community note. She also insisted that the item of $6,359.52 due the estate from the company was a community debt. At the hearing on the objections there was much evidence introduced by both the executrix and the appellant. From an adverse ruling on appellant's two objections, above stated, she has appealed.

██ ██ The item of $9,485.15 represented by the note of the company is community property. It was, in the opinion of the appraisers on January 21, 1938, worth its face value. That value so fixed is *prima facie* the correct value. *United States Fidelity & Guaranty Co.* v. *Greer,* 29 Ariz. 203, 240 Pac. 343. The statutes provide that the executor is chargeable with the estate's assets that come into his possession at the value of the appraisement (except as otherwise provided) and with all the interest, profit and income thereon, but that he is not accountable for debts due the decedent if it appears that they remained uncollected without his fault. Sec. 4048, Revised Code of 1928. These provisions of our statute are the same as like provisions in the California statute. In *In re Loheide's Estate,* 17 Cal. App. 475, 120 Pac. 56, 59, the court said:

"An administrator is chargeable in his account with the whole of the estate of the decedent coming into his possession at the value of the appraisement contained in the inventory. Code Civ. Proc., § 1613. He is not accountable for any debts due to the decedent, 'if it appears that they remain uncollected without his fault.' Id. § 1615. But, if it does not so appear to the court, the administrator must be held answerable for the amount of a debt due the decedent, as appraised in the inventory. *In re Sanderson,* 74 Cal. 199, 203, 15 Pac. 753. Merely charging himself with the note and crediting himself with it is not a statement that it remained uncollected 'without fault' on the part of the administrator. Id. It was also held in that case that there is no presumption of duty performed. The presumption

is that the administrator could have collected the note, in the absence of satisfactory showing that it was not collected without any fault in him.''

The evidence is that the executrix as devisee and the appellant as survivor of the community owned and controlled all of the stock of the company and that the executrix came into the possession of the physical property of such company soon after her qualification as executrix. It is also shown from the records of such company that the executrix had received from such company, subsequent to August 16, 1936, sums aggregating approximately $22,000 and that she had returned to the company only $10,011.69. It also appears that at the time of Phil Torrey's death the assets of such company were approximately $50,000 and its liabilities did not exceed $20,000. It seems clear that if the executrix did not reduce the note to cash it was her fault. It appears the maker of the note had plenty of assets out of which to pay it and the executrix had the control of such assets. We feel that she should account to the appellant for one-half of said note in cash, and that the court erred in not so ruling. The above figures are cited by appellant in her brief as correct and we do not find in appellee's brief any effort to correct them if erroneous or any effort to explain their effect away.

As to the open account due from the company to the estate, the situation is different and rather difficult to solve. That item represents advances or loans made by the decedent to the company, in part from his business as a restaurateur (but how much is not shown), from January, 1936, until his death, August 16, 1936. When the appellant and the deceased were married, the deceased owned two lunch counters or restaurants appraised at $3,035, one located at Roosevelt Street and North Central Avenue and the other at Roosevelt and Seventh Streets. He owned these places both be-

fore and after his marriage and had quite an income from them, averaging during 1935 around $600 net per month, and the evidence is that it was out of this income that he made part of the loans to the company. Deceased's bookkeeper testified that

"a portion of the money came from the bank account of the stands (meaning lunch counters or restaurants)."

The appellant had no property when she married the decedent.

The court made no findings on this issue and the evidence is silent as to the time and attention the deceased devoted to the restaurant business in 1936, except that "he was around there a lot of the time managing it." Now, property owned by a spouse before marriage and that acquired afterwards by gift, devise or descent, with the increase, rents, issues and profits thereof, is the separate property of such spouse. Section 2173, Id. The property acquired during marriage other than in one of the ways above stated and the earnings of the wife and minor children while she lives apart from her husband are community property. Section 2172, Id.

Under the case of *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70, decided in 1914 and followed ever since by this court, all property acquired during coverture, whether taken in the name of the husband or the wife, is *prima facie* community property. *Malich* v. *Malich,* 23 Ariz. 423, 204 Pac. 1020; *Rundle* v. *Winters,* 38 Ariz. 239, 298 Pac. 929. In the Malich case we said [23 Ariz. 423, 204 Pac. 1022] :

" 'all property found in the name or possession of either spouse during marriage is *prima facie* common. This presumption begins the moment of marriage and continues till the marital partnership is dissolved; it does not apply to property acquired after the dissolu-

tion of the community, but it does apply to all property in the name or hands of either spouse at the time of dissolution. Accordingly proof that the property in question was in the hands or name of either spouse at the time of dissolution raises the presumption that it is common.' McKay on Community Property, § 255.''

██ Whether the appellee has met the burden of overcoming the presumption that the money loaned the company belonged to the community is the question to be decided. The source of part of such money is not accounted for. All we know is that part of it came from the restaurant business, but where or how the rest of it was earned, whether before or after coverture, is not shown. As to such sum the presumption in favor of the community should prevail. Any sum entering into such loan to the company obtained from the restaurant business has two natures, one separate and the other community. The separate aspect would be the earnings of the businesses without the management of the deceased and the community aspect would be the percentage due to the management. It is impossible to segregate these. In *Rundle* v. *Winters, supra,* we said [38 Ariz. 239, 298 Pac. 931] :

'' . . . Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself. *Lake* v. *Bender* (*Lake*), 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129; *Jacobs* v. *Hoitt,* 119 Wash. 283, 205 Pac. 414.''

While this states the correct formula, the difficulty arises when one undertakes to apply it to the facts as they exist in this case. In *Lake* v. *Lake,* 18 Nev. 361, 4 Pac. 711, 728, 7 Pac. 74, it is said:

''And in this or any other case, if profits come mainly from the property, rather than the joint efforts

of the husband and wife, or either of them, they belong to the owner of the property, although the labor and skill of one or both may have been given to the business. On the contrary, if profits come mainly from the efforts or skill of one or both, they belong to the community. It may be difficult in a given case to determine the controlling question, owing to the equality of the two elements mentioned, but we know of no other method of determining to whom profits belong. In the use of separate property for the purpose of gain, more or less labor or skill of one or both must always be given, no matter what the use may be; and yet the profits of property belong to the owner, and in ascertaining the party in whom the title rests, the statute provides no means of separating that which is the product of labor and skill from that which comes from the property alone.''

■ We think the inherent nature of the restaurant business is such that if it is a success it is generally, if not always, due to the management. Proper food properly prepared and served are the things that attract and hold the trade. These services were rendered by the deceased and whatever accrued therefrom belongs to the community.

From the evidence, we are satisfied that the executrix should account in cash to the appellant for one-half of the note of the company and for one-half of the account due from the company to the estate as community property, and that the court erred in not sustaining the objector's contention to these items in her final account.

The case is remanded with directions that further action be had in accordance herewith.

LOCKWOOD and McALISTER, JJ., concur.