[Civil No. 4535.   Filed June 19, 1945.]

[159 Pac. (2d) 786.]

BETTY LOU BLAINE, Appellant and Cross-Appellee, v. CHARLES E. BLAINE, Appellee and Cross-Appellant.

Messrs. Gust, Rosenfeld, Divelbess & Robinette, for Appellant.

Mr. George T. Wilson, for Appellee.

MORGAN, J.—Plaintiff and defendant married on June 12, 1935, and resided together as husband and wife, in Phoenix, until November 7, 1940, at which time plaintiff brought an action for divorce. Two daughters were born to the union, one aged three years and one four months at the time the action was instituted. Judgment was entered on February 13, 1942 granting plaintiff a decree of divorce, awarding her a one-half interest in the community property as described in the decree, the custody of the two children and alimony for the maintenance of herself and the children, with provision for the reduction of the amount allowed in the event she resumed work in a gainful occupation. The defendant was given the right to visit the children at reasonable times and allowed the custody of the older daughter over week ends on the last week of each month. He was also given temporary custody of this child for the first two weeks in July of each succeeding year.

The facts proved at the trial and pertinent to the issues on this appeal are, briefly, as follows: At the time of marriage defendant was the owner of a personal service business. He owned a home and some rental property in Phoenix, cash, accounts receivable, bonds, stocks, an automobile, and life insurance policies with surrender values, totaling, exclusive of real estate, $17,633.28. The defendant conducted his business under the name of Charles E. Blaine & Sons, and maintained a commercial account in the Valley National Bank. All income derived from the business

after marriage, which is conceded to be community property, was deposited in the checking account with the Valley National Bank. All of the income from the separate estate of defendant, either from real or personal property, was also deposited in this account. At the close of 1937 the Valley National Bank balance was reduced to $19.08. On December 31, 1940 the balance in the account was $6,436.32. All monies received from community and separate sources were commingled by deposits in one account. There was no segregation. The duplicate deposit slips showed the source of the money deposited. Checks issued disclosed the purpose except that a large number of checks were drawn simply to cash. On May 14, 1936 purchase was made of property located at 1610 W. Polk Street, Phoenix, and deed taken in the names of the defendant and plaintiff. Check in payment of this property was drawn on the commercial account in the Valley National Bank in the sum of $2,100. On the date of marriage the defendant owned 25 shares of Valley National Bank stock. After marriage he purchased 13 shares, making a total of 38. Thereafter a stock dividend of one-half share for each outstanding share of stock was declared, a dividend of 19 shares being received. During marriage the parties filed joint federal and state income tax returns, dividing all income between them, both from community and separate property sources.

Findings were made by the trial court, and for the purpose of brevity will be summarized so far as applicable here:

Defendant deposited all income from his separate estate, as well as from community sources, in the one bank account. The accounts and records of defendant were so kept as to permit segregation of the community and separate estates of the parties, and the tracing of the revenue and funds so deposited. From this account all community expenses were paid and expendi-

tures made for benefits to defendant's separate property, including taxes and gifts to members of defendant's family by previous marriages, in the total sum of $4,628.02, together with premiums on life insurance policies in the sum of $1,684.98.

On May 6, 1936 defendant sold bonds owned by him prior to marriage for $2,050, which was deposited in the commingled account on that date. Various checks were drawn and deposits made. On May 14th the Polk Street property was purchased and check for $2,100 to purchase the property was drawn on this account. At defendant's request the title to this property was taken in the names of both parties.

During marriage the following described property was acquired or paid for out of the commingled bank account and was held by the parties at the time of the trial: Cash $6,436.32; accounts receivable, less accounts payable, $4,056.07; Polk Street real estate $2,100; increase in cash value life insurance policies $1,110; additions to household goods, $1,890.18; additions to office equipment $404.39; 32 shares Valley National Bank stock $312; totaling $16,308.96, of which $786.91 of the cash was separate property of the defendant.

A portion of the item "additions to household goods" was found to belong to the plaintiff through gifts. The balance of that item appears to have been treated as the separate property of defendant.

On these findings the court concluded that the Polk Street property, increase in cash value of life insurance policies, and additions to office equipment, all of which were purchased after marriage on checks drawn on the commingled account, were the separate property of the defendant, and that the balance of the items, including 13 shares of Valley National Bank stock purchased after marriage, and a 19 shares dividend, constituted community property. The court directed plaintiff's community interest, amounting to $5,008.74, being

one-half of the items found, to be paid to her in equal installments; the sum of $250 to be paid to her for attorneys' fees, and a like amount for costs. Both plaintiff and defendant appealed from the judgment, except the provisions thereof granting plaintiff a divorce.

Plaintiff claims error in the following particulars:

(1) Allowance of temporary custody of the minor daughter to defendant for the periods heretofore mentioned, on the ground that defendant is not a fit and proper person to have the custody of said child;

(2) The evidence clearly shows that the allowance of $125 per month for alimony and support of plaintiff and the two minor children, which is to be reduced to $100 per month in the event plaintiff resumes work in some gainful occupation, is wholly insufficient;

(3) The court costs and attorneys' fees allowed were, under the evidence, entirely insufficient;

(4) The Polk Street real estate, the increase in cash value of life insurance policies, and the additions to office furniture are, under the evidence and the law, community property;

(5) The Polk Street real estate, if not community property, was vested in plaintiff through gift from defendant;

(6) Credit should have been given to the community for $4,628.02, total amount of taxes paid on defendant's separate real estate and as gifts to members of his family by previous marriages, in that the evidence clearly disclosed that such payments were made after marriage out of the commingled bank account, and there was no evidence showing any of such payments were charged to the separate account of the defendant.

The defendant assigns error as follows:

(1) In the failure of the court to take into consideration $4,657.91 in accounts receivable in his business at the time of marriage;

(2) In treating the 32 shares of Valley National Bank stock as community property;

(3) In granting to plaintiff household goods and furniture as her separate property.

■ Questions concerning the custody of the minor children of parties in a divorce action are peculiarly for the determination of the trial court. Orders pertaining to the custody of children may be changed from time to time. The superior court has the opportunity of seeing and hearing the parties. Under the evidence in this case we cannot say that the trial court's order respecting custody was not justified. Upon the return of this case to the lower court, the plaintiff or the defendant will be at liberty to make such application as may appear proper and necessary concerning custody. We leave the matter to the discretion of the trial court.

■ The evidence is not clear as to the exact earning capacity of the defendant. Household and other expenses during the period the parties lived together averaged about $430 per month. It may be inferred that the average earnings of the defendant amounted to at least $450 per month. During the pendency of the suit, defendant voluntarily paid $150 per month, plus drug and medical bills amounting to $40 per month. The amount allowed by the court for maintenance of the plaintiff and the two children is inadequate. Plaintiff should be paid the sum of $175 per month for the maintenance of herself and children pending the further order of the court, to be reduced to $100 per month if the plaintiff is able to and does engage in some gainful occupation.

■ The evidence disclosed that plaintiff expended, in addition to ordinary court costs, the sum of $548.75 in payment of auditor's fees for services rendered which resulted in uncovering a considerable amount of property the court found to be community. The defendant's claim was that there was no community in

excess of $449.62. The allowance of $250 for court costs and suit money is wholly insufficient. A reasonable allowance, under the circumstances, would be $600.

■■ The uncontroverted evidence discloses that plaintiff's attorneys spent fifteen days in the preparation of the case, and five days in the trial thereof. The testimony adduced was that the reasonable value of these services was the sum of $1,250. Counsel in this case, both for plaintiff and defendant, represented their clients with fidelity and marked ability. Lawyers are entitled to a fair and reasonable compensation for their services. Courts should not hesitate in fixing an amount for attorney's fees based upon the evidence, and which is in accordance with the usual reasonable charges made by members of the profession. Taking into consideration the efforts of counsel in this cause, the time involved, the evidence as to the value of the services, and the character of the case, we think the sum of $1,000 fees for plaintiff's attorneys would be reasonable.

■ Section 63–301, Arizona Code Annotated 1939, provides that all property acquired during coverture by either the husband or wife, except as may be acquired by gift, devise or descent, or which may be earned by the wife and her minor children while she is living apart from her husband, shall be community property, in which both the husband and wife have an equal interest. This court has held on many occasions that property acquired by either spouse during coverture is presumed to be community property. In order to overcome this presumption the evidence must be clear, satisfactory and convincing. *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70; *Malich* v. *Malich,* 23 Ariz. 423, 204 Pac. 1020; *Rundle* v. *Winters,* 38 Ariz. 239, 298 Pac. 929.

■ Where the claim is made that property purchased during the existence of a marriage is the sep-

arate property of one of the spouses, the fund with which such property was acquired must be clearly shown to have been the separate property of such spouse. No inference will be made against the community character or that the fund was separate, except under circumstances of a conclusive tendency. The presumption in favor of the community character of the property acquired during marriage may be overcome only by clear and cogent proof. *Morris* v. *Hastings,* 70 Tex. 26, 7 S. W. 649, 8 Am. St. Rep. 570; *In re Pepper's Estate,* 158 Cal. 619, 112 Pac. 62, 31 L. R. A., N. S., 1092; 11 Am. Jur. 204, sec. 47.

█ When, as here, separate and community income and funds are commingled in one account and treated as community property without segregation, the entire amount ordinarily becomes community property. This rule is based upon the theory that the community interest is paramount and is especially applicable where, as in this case, the community funds constitute the major portion of the deposits. Rundle v. Winters, *supra;* 11 Am. Jur. 198, sec. 38.

█ It is our view, taking into consideration the presumption of community character and the evidence of the commingling of separate and community funds, that the increase in the cash value of life insurance and additions to the office furniture must be treated as community property. The payments made for insurance premiums after marriage were all from the commingled account and without any designation that these payments were to be charged to the separate funds of the defendant. The same situation exists with respect to the additions to the office furniture. Since we are compelled to hold that the commingled account was community property, and the payments both for insurance premiums and additions to office furniture were made out of this account, it follows that the community is entitled to credit for the additional surrender value of the policies and for additions to office fur-

niture. This conclusion is fully supported by our prior holdings in *Horton* v. *Horton,* 35 Ariz. 378, 278 Pac. 370, and *Rothman* v. *Rumbeck,* 54 Ariz. 443, 96 Pac. (2d) 755.

This leaves for consideration the status of the Polk Street property, whether community or separate, or owned jointly by plaintiff under the gift theory. The law is that not only all property owned by spouses at the time of marriage, but also the rents, issues and profits thereof are their separate property. Unquestionably, as found by the trial court, the Polk Street property was purchased through the separate funds of defendant. Just prior to purchasing this property he sold his separate bonds and deposited the proceeds, $2,050, in the bank. Letters were written by the defendant at the time, disclosing that he expected to use this money for the purchase of this property. Within a few days after its deposit, although deposited in what we have referred to as the commingled account, $2,100 was drawn out and used in the purchase of this property. In other words, the evidence clearly shows that this particular purchase was made with separate funds marked for such purpose at the time they were deposited. However, the defendant took title to the property jointly with his wife. Following its acquisition he treated it as being the joint property of himself and wife. The deed was recorded in the names of the plaintiff and defendant; taxes were paid out of the community funds; contract was prepared for the sale of this property by himself and wife; $500 was paid on the purchase price; default having been made, the $500 was shown in the tax returns as the joint income of plaintiff and defendant. So far as the record shows, there never was any claim on the part of defendant, until the divorce action was instituted, that plaintiff did not own an undivided one-half interest in the property.

Defendant testified on the trial of the action that he purchased the property for resale to Miss Ruth Stearns, a sister of the plaintiff. He said,

"We made an arrangement with Miss Stearns then that she was to purchase it from me and Betty (his wife) .... We sent her a contract for purchase. ... I bought it primarily ... to help Ruth out ... but I told her if she didn't want it for that *we* would rent it ... (Italics ours.) I went to Mr. Fletcher at the bank and told him that when he had the deed made out to make it to Mrs. Blaine and myself."

Over objection of plaintiff, defendant testified that it was not his intention to acquire this real estate as community property or to make Mrs. Blaine a gift of a one-half interest. This was the only evidence showing or tending to show that the Polk Street property was not in fact bought with the intention of giving the plaintiff a one-half interest therein.

We are not unmindful of the rule that where there is reasonable evidence to support the finding of the trial court, such finding will be upheld. We think that the statement made by the defendant five years after the purchase that he did not intend to vest any interest in this property in his wife, is not reasonable evidence within the rule. The overwhelming weight of the evidence is to the contrary. Since the defendant used his separate funds to purchase the property, unless he intended to make a gift to his wife of the one-half interest, there was no reason for him to include her in the deed. If deeds not involving trusteeships, executed and delivered in the joint names of parties and treated as their joint property for years, may be overturned simply on the testimony of one of the grantees, long subsequent to the execution of the instrument, that he did not intend the conveyance to operate as a grant to his co-grantee, no title would be safe. We cannot assent to such a rule. The defendant had the right to use this method

in making a gift of one-half of the property to plaintiff. *Jones* v. *Rigdon,* 32 Ariz. 286, 257 Pac. 639, 640:

"Ordinarily, such a gift is evidenced by a conveyance from one to the other, but this is not the only method by which it is established. The fact that a husband causes or permits a conveyance to be made to his wife tends to show that it was the intention of the parties the property should be her separate estate."

In the case of *Scott* v. *Currie,* 7 Wash. (2d) 301, 109 Pac. (2d) 526, it was held that where a husband purchases property in the name of the wife, paying for it from his separate funds, the inference to be drawn is that the husband intended to make a gift to his wife. In connection with such a transfer no resulting trust is created in favor of the husband. The wife is not deemed to hold the property for the use of the husband, but in her own right. *Armstrong* v. *Blalack,* 46 Ariz. 507, 52 Pac. (2d) 1183; Scott on Trusts (1939), vol. III, sections 442, 443, pages 2256–64; Restate. of Law on Trusts, vol. II, sections 442, 443, pages 1355–59. The presumption that a conveyance so taken constitutes a gift may be rebutted. The burden of proof is upon the husband to establish a resulting trust rather than that the transaction amounted to a gift. This can only be done by evidence showing a clear intention of the trust. *Mountford* v. *Mountford,* 181 Md. 212, 29 Atl. (2d) 258; *Collins* v. *Collins,* 176 Ark. 12, 2 S. W. (2d) 41; *Mott* v. *Iossa,* 119 N. J. Eq. 185, 181 Atl. 689; *Spina* v. *Spina,* 372 Ill. 50, 22 N. E. (2d) 687. We accordingly hold that plaintiff is the owner under the evidence of a one-half interest in the Polk Street property.

There is no merit to plaintiff's claim that a credit should be given the community for the total amount paid out of the commingled fund for taxes on defendant's separate property and as gifts to members of his family by previous marriages. The evidence clearly showed that the defendant contributed to the

commingled fund from his separate sources amounts somewhat in excess of these expenditures. To that extent he is entitled to set off contributions of separate funds to the community account. He is in effect a creditor of the community. 11 Am. Jur. 220, sec. 68. The doctrine of commingling does not deprive the spouse from taking credit for advancements to the community. Furthermore, there is a presumption that where separate and community funds are commingled in one account, payments out of that account for charges against separate property or for separate uses are deemed to be paid out of the separate funds. *In re Woodburn's Estate,* 190 Wash. 141, 66 Pac. (2d) 1138; *Guye* v. *Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A., N. S., 186; *White* v. *White,* 26 Cal. App. (2d) 524, 79 Pac. (2d) 759. This does not mean that such presumption can be indulged in when the payment out of the commingled fund has been for the purchase of property because all acquisitions are presumed to be conmmunity property.

Plaintiff also claims that credit should have been given to the community for approximately $8,000 cash expenditures made by defendant. This contention is likewise without merit. The defendant testified that these cash expenditures were made in connection with the community business. There is no controversy as to the facts.

So far as we are able to ascertain from the record, no evidence was introduced that the bills receivable, owned by defendant at the time of marriage, were collected. For aught that appears, if collected they had been spent long prior to the institution of the divorce action. The evidence does show that in 1937 the parties had practically no cash. In fact, they were indebted to the Valley National Bank on notes. The bills receivable at the time of marriage could not be reflected in the cash owned by the parties in 1940. The court properly held that the accounts receivable

on the date of marriage could not be considered in determining the value of the community assets in 1940. Under the circumstances the court could not allow any credit against the cash balance as it existed at the time of the trial.

Only 19½ shares of the Valley National Bank stock can be treated as community property, the 13 shares acquired after marriage and the dividend of 6½ shares thereon. The court erred in holding 32 shares of this stock is community property. This item should be reduced to 19½ shares, with a value of $190.12. We think the evidence justified the trial court in allowing the plaintiff as her separate and independent property, secured through gift, the household goods and furniture which we have heretofore mentioned. No error appears on this claim.

In accordance with the views we have expressed, the judgment of the lower court is modified as follows: By allowing to plaintiff alimony and support for herself and two minor children in the sum of $175 per month from the date of the decree, which may be reduced to $100 per month in the event she resumes work in a gainful occupation; $600 for court costs and suit money; $1,000 for attorney's fees; by vesting plaintiff with a one-half interest in the Polk Street property; and by fixing plaintiff's interest in cash and other community items at $5,705, which amount shall be paid by defendant to plaintiff.

At the hearing of this cause the parties admitted that plaintiff had been occupying the Polk Street premises since the entry of the original decree, without the payment of any rental for defendant's interest. Upon the return of this mandate, the superior court may allow on balance due for unpaid alimony under the decree as modified a reasonable allowance for rental and such other payments as defendant may have made over the $125 per month as fixed in the original decree. The court may also allow defendant

a reasonable period to pay any balance that may be due. The court may also fix a reasonable time for the payment in installments of plaintiff's interest in the community property. Notwithstanding this opinion, the superior court shall have continuing jurisdiction over the amount of alimony to be paid. We further direct that $550, one-half of the additional costs and attorney's fees allowed herein, be charged to plaintiff's community interest.

As so modified, the cause is remanded with directions to reform the judgment in accordance with this opinion, with costs of this appeal to be paid by defendant.

STANFORD, C. J., and LaPRADE, J., concur.