273 P.2d 161

BARR et al. v. PETZHOLD et al.

No. 5761.

Supreme Court of Arizona.

July 12, 1954.

Jerman & Jerman, and R. R. Woodford, Phoenix, for appellants and cross-appellees.

Evans, Hull, Kitchel & Jenckes, by Jos. S. Jenckes, Jr., Phoenix, for appellee and cross-appellant.

STANFORD, Justice.

This is an appeal by John H. Barr and Ida Barr, defendants below and appellants herein, from that certain portion of a judgment rendered by the Maricopa County Superior Court on November 12, 1952, in favor of John B. Petzhold, Jr., plaintiff below and cross-appellant herein, by which plaintiff was awarded an equitable lien in the sum of $14,400 upon Lots 58 and 85 of Pyle Estates in Maricopa County, and also a cross-appeal by plaintiff against these defendants and their son, Thomas B. Barr, and his wife, Edith D. Barr, cross-appellees, from that portion of said judgment which

failed to impose an equitable lien upon Lots 5 and 7 and the east half of Lot 9, Block 5, Windsor Square, Phoenix, in the amount of $13,624.56.

The material facts were these. In 1929 defendant John H. Barr, then a large stockholder and secretary-treasurer of the S. 'A. Gerrard Company, Cincinnati, Ohio, as an inducement for plaintiff, then assistant secretary-treasurer and now president of said company, to accept employment in said company, gave plaintiff an option to purchase 25,000 shares of capital stock of said company for $25 a share. By the agreement plaintiff expressly reserved the right to cancel the option at any time and demand return of the amounts theretofore paid to defendant for the stock. Pursuant to such agreement, between September 4, 1929, and December 31, 1931, plaintiff made payments to defendant in the sum of $18,404.10. In 1930, defendant Ida H. Barr acquired twelve acres of land in Fort Thomas, Kentucky, and a residence was constructed thereon at a cost of approximately $125,000. Defendants attempted to show that the house was paid for entirely out of proceeds from the sale of stock belonging solely to defendant, Ida H. Barr. Plaintiff's evidence, on the other hand, indicates that $50,000 of this sum was contributed by defendant John H. Barr, being money borrowed from one Albert Diem.

In 1930 and 1931 the affairs of the S. A. Gerrard Company began to deteriorate and ·defendants personally suffered a series of financial reverses. In January, 1932, plaintiff exercised his right to cancel the option contract and demanded that defendant John H. Barr return the sums paid thereunder. The latter then gave plaintiff a promissory note for the amount due. Subsequent thereto, in January, 1950, plaintiff obtained a Missouri judgment against defendant upon said promissory note in the sum of $36,-323.77, which included interest and costs. About thirty days later an Arizona judgment was obtained, based on the Missouri judgment. The present action was brought by plaintiff to collect said Arizona judgment.

In 1942 defendant John H. Barr came west and entered the vegetable brokerage standing. The effort proved successful, at business in an effort to regain his financial least through 1945. In December, 1945, he made a gift to cross-appellees, his son, Thomas B. Barr, and daughter-in-law, Edith D. Barr, of $13,624.26 as a down payment upon a residence situated in Windsor Square, Phoenix.

Between 1948 and 1950 portions of the Fort Thomas estate were sold for $77,500 by defendants, who thereafter purchased Lots 85 and 58 of Pyle Estates in Maricopa County. Title to the latter property was taken in the names of defendant Ida Barr and cross-appellee Thomas B. Barr. The $14,400 down payment therefor was obtained from the proceeds of the sale of property in Kansas City, which was pur-

chased with funds derived from the sale of the Fort Thomas estate.

Plaintiff instituted this action on August 23, 1951. The first claim was based upon the Missouri judgment. The second claim set forth, among other things, that the $50,000 payment by defendant John H. Barr towards the construction of the Fort Thomas residence and the gift to cross-appellees of the Windsor Square property were in fraud of creditors. Plaintiff prayed that defendant John H. Barr be declared to be the owner of the Pyle Estates property and the Windsor Square property, and that the same be subjected to satisfaction of plaintiff's judgment. Defendants did not dispute the first claim and, hence, did not resist the entry of judgment in favor of plaintiff and against defendant John H. Barr in the amount of $36,323.77, with costs in the sum of $99.90. Defendants, however, denied the allegations in the second claim as to conveyances in fraud of creditors.

Defendants, in asking for a reversal in part of the superior court judgment, assert that plaintiff's action is barred by the statute of limitations of the state of Kentucky and of the state of Arizona, by laches, and by the doctrine of clean hands. Plaintiff, in support of his cross-appeal, asserts as error the superior court's failure to impose an equitable lien in his favor on the Windsor Square property in view of what he claims to be a showing of a conveyance in fraud of creditors. We shall consider these assignments separately.

## I.

Is plaintiff's action barred by a statute of limitations of the State of Kentucky?

Plaintiff claims that he is entitled to an equitable lien upon the proceeds from the Fort Thomas property, which went into the Pyle Estates property, to the extent of the sums ($17,604.10) he had paid defendant John H. Barr under the revocable option contract by the date the latter contributed $50,000 in borrowed money towards the construction of his wife's house at Fort Thomas, by reason of Section 1907 of Carroll's Kentucky Statutes, 1930, which reads:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities * * *."

Defendants in this appeal have not argued that plaintiff was not a creditor of theirs in 1930, within the meaning of Section 1907, supra, but contend that said statute cannot now be asserted by plaintiff as a basis for relief for the reason that no action was brought thereunder to perfect the lien within ten years after the conveyance. Defendants' position is supported by Section 2519, Carroll's Kentucky Statutes, 1930, which reads:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to

have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

See Brown v. Connell, 85 Ky. 403, 406, 3 S.W. 794, 795; Dorsey v. Phillips, 84 Ky. 420, 426–430, 1 S.W. 667, 669–670.

■ However, for one to take advantage of the bar provided by Section 2519, supra, it is necessary that he raise the matter in his pleading. Baker v. Begley, 155 Ky. 234, 236–237, 159 S.W. 691, 692; Yager's Adm'r v. President, etc., Bank of Kentucky, 125 Ky. 177, 184, 100 S.W. 848, 850; Swinebroad v. Wood, 123 Ky. 664, 674–675, 97 S.W. 25, 28. Defendants failed to plead said statute of limitations.

■ Therefore, inasmuch as defendant John H. Barr, a debtor, made a transfer without consideration at a time when he was under obligation to plaintiff, such transfer, by the statutes of Kentucky, was fraudulent and void so far as plaintiff was concerned, and created in his favor, to the extent that he was then a creditor, a constructive trust or an equitable lien upon the property, and a power in him to set the transaction aside. Moreover, if the property transferred be, as here, sold or converted into a different form, the proceeds thereof or new form may be reached so long as such are capable of substantial identification. 54 Am.Jur., "Trusts", §§ 248, 249, 251.

■ Defendants also assert the six-month limitation in Section 1911, Carroll's Kentucky Statutes, 1930. By its own terms, however, this section places a limitation only on actions brought under Section 1910 (relating to conveyances in contemplation of insolvency) preceding it, and has no applicability whatsoever to actions under Section 1907, supra, which is the statute upon which plaintiff relies. See Liberty Bank & Trust Co. v. Davis, 281 Ky. 51, 55–56, 134 S.W.2d 988, 990.

## II.

■ Is plaintiff's action barred by a statute of limitations of the State of Arizona?

Defendants assert that an application of Section 29–203, A.C.A.1939, to this case would bar plaintiff's claim to a constructive trust or an equitable lien upon the Pyle Estates property. That statute places a three-year limitation upon all actions for relief from fraud, the time being calculated from the date the cause of action shall have accrued.

It is clear, however, that plaintiff had no cause of action in Arizona to impose a constructive trust or an equitable lien upon the Pyle Estates property until the Fort Thomas estate (which, as we have seen, was so encumbered), was sold beginning in 1948 and the proceeds invested in the Pyle Estates property in December, 1950, and in May, 1951. This action commenced August 23, 1951, easily within the three-year period.

## III.

### Is plaintiff's action barred by laches?

Defendants argue at great length that plaintiff should be denied recovery, without regard to the statute of limitations, simply for having failed voluntarily for a period of about twenty years to file an action to impose the equitable lien or constructive trust.

This court recognizes as meritorious the defense of laches. The general rule is that a plaintiff must exercise diligence and avoid unreasonable delay in prosecuting an action. The reason for this rule is that unreasonable delay and lack of diligence either evidence an abandonment by the plaintiff of his claim or else prejudice in some way the defense against such claim. Price v. Sunfield, 57 Ariz. 142, 147–148, 112 P.2d 210, 212.

Basically, then, the question before us is whether plaintiff's delay evidenced an abandonment of his claim or prejudiced the defense. In resolving questions of this nature we are governed by the application of the following rules. The trial court has broad discretion in the balancing of evidence and unless this discretion is shown to be clearly abused, the judgment resulting therefrom will not be disturbed. State v. Martin, 59 Ariz. 438, 448, 130 P.2d 48, 52; Price v. Sunfield, supra; Parker v. McIntyre, 47 Ariz. 484, 492–493, 56 P.2d 1337, 1340. Evidence will be considered in the light most favorable to the appellee. Kenton v. Wood, 56 Ariz. 325, 328, 107 P.2d 380, 382.

Plaintiff's evidence shows clearly that he possessed no intention to abandon his case. His delay was prompted by a desire not to jeopardize his friendship of long standing with appellants, by a legitimate interest in protecting his own business affairs which conceivably could have been harmed by such a lawsuit, and by a realization that any action (defendant's financial condition being as unstable as it was) would be, in a practical sense, futile.

Therefore, unless it appears that the effect of the delay was to injure the defendants in some of their substantial rights, a matter we will next consider, there is no substance to the defense of laches in the present case.

Defendants say they are prejudiced by the delay in bringing this action since, as a result of a loss of records, they are handicapped in showing that the $50,000 borrowed by defendant John H. Barr from Albert Diem, was not used to help build the Fort Thomas home. We do not think the evidence concerning the loss of records showed a handicap of sufficient seriousness to require the trial court to find the action barred by laches. Defendant John H. Barr's testimony alone was sufficient to warrant the finding that the $50,000 went into the construction of the home. He admitted writing a letter under date of De-

cember 30, 1930, stating that he had used this money in the building of the new home.

## IV.

Is plaintiff's action barred by an application of the doctrine of clean hands?

Defendants assert that plaintiff came into court seeking equitable relief lacking clean hands. Several acts of allegedly inequitable conduct are brought to our attention.

 It is claimed that the financial reverses incurred by defendant John H. Barr were the result of decisions and actions taken by him and plaintiff together, and that thus the latter is in no position equitably to restore himself at the expense of the former. It has not been contended, however, that the resulting losses were intentionally provoked by plaintiff, and it can hardly be argued that a debtor might escape a solemn obligation to his creditor simply on the grounds that the parties subsequently exercised poor judgment together in managing their investments thereby rendering the satisfaction of the pre-existing obligation more difficult.

 Next, it is claimed that the very act of delaying, heretofore discussed on the question of laches, simulated a " * * * vulture * * * moving in for the kill." It is contended that simply "waiting until Mr. Barr's position had been reduced from one of wealth and influence to one of near poverty * * *", was unclean play. We must confess that we have never before heard it argued by a debtor that a creditor was committing an unconscionable act in failing to press for collection of a just claim until long after the obligation became due. The argument is, of course, untenable.

 Finally, it is claimed that plaintiff's most unconscionable act lies in the institution of this action at all, because if successfully pursued, it will result in extensive suffering and hardship on defendant, Ida Barr, who is pictured as being an innocent victim of these proceedings. The argument is not persuasive. First, the practical effect of a sought-for judgment, if obtained free from reversible error, cannot in and of itself, be attacked under the clean hands doctrine as being the unclean act which ought to preclude that judgment from ever being rendered. The doctrine simply is not that comprehensive. Secondly, Ida Barr by this judgment will not be imposed upon to a degree greater than the investment in the Pyle Estates property represents her husband's equity therein, being his investment of $50,000 borrowed money in the Fort Thomas estate. Plaintiff does not seek to impose an equitable lien upon her separate property.

 It should be noted that for the doctrine of clean hands to apply to bar a claim, it is necessary that the act of unconscionable conduct on the part of plaintiff relate to the very activity that is the basis of his claim. 30 C.J.S., Equity, §§ 93, 98, pages

476, 491–493. It is nowhere claimed here that plaintiff engaged in any such conduct with regard to the execution of the option contract, which is the foundation of his claim here, and certainly none of the specific acts alleged by defendants, and discussed above, fall within the scope of that transaction.

### V.

Considering next the cross-appeal, did the superior court err in failing to impose a constructive trust or equitable lien upon the Windsor Square property?

In December, 1945, defendant John H. Barr made a gift to his son and daughter-in-law (cross-appellees) by making the down payment of $13,624.56 upon the Windsor Square residence. Plaintiff claims that defendant was insolvent at that time, that the transfer was thus, under Sections 58–401 and 58–402, A.C.A.1939, a fraud on plaintiff, a creditor, and that, hence, it could be set aside by him to the extent necessary to satisfy his judgment. In reply, defendants and cross-appellees deny that John H. Barr was insolvent at that time and contend further that, even if he were, the property transferred was either altogether the community property of John H. Barr and his wife or was a combination of separate and community funds so inseparably intermingled that they must be treated as community in nature and thus not subject to the claims of his separate creditors.

The first paragraph of Section 58–402, supra, is relied upon as the basis of plaintiff's claim. It reads:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

An insolvent person is defined by Section 58–401, supra:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The record does not show the grounds relied upon by the trial court in rejecting plaintiff's claim. Theoretically, it appears to us, the evidence submitted would suggest two possible grounds, either of which would justify the decision reached by the trial court.

First, while the evidence was conflicting as to the extent of defendants' assets and liabilities as of December, 1945, defendants' uncontradicted testimony showed that defendant John H. Barr maintained an account in Phoenix at the Valley National Bank which contained, immediately following the withdrawal for the down payment, a balance of $33,764. Moreover, it

is pretty clear that defendants had been operating their vegetable brokerage business on a consistently profitable basis for many months prior to the transfer. Under the rules (already discussed herein in another connection) governing the scope of review of findings made by the superior court, viewing the evidence as a whole, we cannot say, as a matter of law, that the trial court erred in its refusal to recognize an equitable lien upon the property running in favor of plaintiff, if based upon a finding that defendant was not insolvent within the meaning of the statute at the time the transfer was made.

■ Secondly, it is our position that the judgment of the superior court may be upheld even if based only upon a finding that the funds contributed by defendant John H. Barr were not of a nature that could be reached by his separate creditors. Our law is well settled that a creditor cannot reach the community property of both spouses to liquidate the separate obligation of the husband. Section 63–303, A.C.A. 1939. Our law is equally well settled that the proceeds from an investment consisting originally only of the separate property of one spouse, to the degree that they represent the product of skill, labor or management of one of the spouses (as opposed to a mere return interest on the investment) are community in nature. Lawson v. Ridgeway, 72 Ariz. 253, 260, 233 P. 2d 459, 463, 29 A.L.R.2d 518, 526; Porter v. Porter, 67 Ariz. 273, 280–281, 195 P.2d

132, 136–137; In re Torrey's Estate, 54 Ariz. 369, 375–376, 95 P.2d 990, 992–993; Rundle v. Winters, 38 Ariz. 239, 245, 298 P. 929, 931. And where doubts exist as to whether the proceeds represent the product of skill, labor, or management, as opposed to inherent return on investment, they are generally resolved in favor of finding the former, there being a strong presumption, rebuttable only by clear and convincing evidence, that all earnings during coverture are community in nature. Porter v. Porter, 67 Ariz. 273, 279, 195 P. 2d 132, 136; Tyson v. Tyson, 61 Ariz. 329, 340, 149 P.2d 674, 679; In re Torrey's Estate, 54 Ariz. 369, 374–375, 95 P.2d 990, 992.

■ Moreover, when separate and community funds have become commingled, the commingled funds are presumed to be community in nature, and the burden is upon one claiming them, or any portion of them, to be separate, to prove such fact and the amount by clear and satisfactory evidence. Porter v. Porter, 67 Ariz. 273, 281–282, 195 P.2d 132, 137; Blaine v. Blaine, 63 Ariz. 100, 109, 159 P.2d 786, 790; Rundle v. Winters, 38 Ariz. 239, 245, 298 P. 929, 931.

■ Evidence was presented which indicated that the down payment money paid by defendant John H. Barr for the Windsor Square residence was obtained from earnings from the vegetable brokerage business and that these earnings were primarily a product of an application of skill, labor

**410**

and management by defendant. In any event, again relying upon the rules set forth above that guide us in the review of findings made by a superior court, we cannot say, as a matter of law, that the judgment was erroneous if based upon a finding that the money invested by defendant John H. Barr was not of a nature that could be reached by his separate creditor, plaintiff herein.

The judgment is, in all respects, affirmed.

PHELPS, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.