HOMER W. FORRESTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2376–66.   Filed February 20, 1968.

Homer W. Forrester, pro se.
*Edward B. Simpson*, for the respondent.

500

OPINION

Only one issue remains, namely, whether Apache, a "small business corporation" as that term is defined in section 1371(a), I.R.C. 1954, as amended, was a validly elected subchapter S corporation.[2] The applicable provisions of sections 1371(b) and 1372, I.R.C. 1954, as

---

[2] "Subchapter S—Election of Certain Small Business Corporations as to Taxable Status" of the Internal Revenue Code of 1954, as amended, secs. 1371–1377, was added to the Code by sec. 64 of the Technical Amendments Act of 1958, Pub. L. 85–866, 72 Stat. 1606, 1650.

amended, are in the margin.[3] We must first determine whether the 15,500 shares of Apache stock acquired by petitioner on April 23, 1962, were the community property of petitioner and his then wife Bernice or the separate property of petitioner. If community, then Bernice was also a shareholder[4] and, under section 1372(a), was required to consent to such election within the time specified in section 1372(c).

Section 25–211 of the Arizona Revised Statutes is entitled "Property acquired during marriage as community property; exceptions; disposition of personal property" and provides:

A. All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children while she lives separate and apart from her husband, is the community property of the husband and wife.

B. During coverture, personal property may be disposed of by the husband only.

The Arizona courts have repeatedly held that property acquired during marriage is presumed to be community property subject only to the exceptions mentioned in section 25–211 of the Arizona Revised Statutes, *supra*. This is true no matter in whose name the title may stand. *Rundle* v. *Winters*, 38 Ariz. 239, 298 P. 929 (1931) ; *Lincoln Fire*

---

[3] SEC. 1371. DEFINITIONS.

(b) ELECTING SMALL BUSINESS CORPORATION.—For purposes of this subchapter, the term "electing small business corporation" means, with respect to any taxable year, a small business corporation which has made an election under section 1372(a) which, under section 1372, is in effect for such taxable year.

\* \* \* \* \* \* \*

SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.

(a) ELIGIBILITY.— \* \* \* any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation—

\* \* \* \* \* \* \*

consent to such election.

\* \* \* \* \* \* \*

(c) WHERE AND HOW MADE.—

(1) IN GENERAL.—An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations.

\* \* \* \* \* \* \*

(d) YEARS FOR WHICH EFFECTIVE.—An election under subsection (a) shall be effective for the taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, unless it is terminated with respect to any such taxable year, under subsection (e).

\* \* \* \* \* \* \*

(g) CONSENT TO ELECTION BY CERTAIN SHAREHOLDERS OF STOCK HELD AS COMMUNITY PROPERTY.—If a husband and wife owned stock which was community property (or the income from which was community income) under the applicable community property law of a State, and if either spouse filed a timely consent to an election under subsection (a) for a taxable year beginning before January 1, 1961, the time for filing the consent of the other spouse to such election shall not expire prior to May 15, 1961.

[4] Cf. sec. 1372(g).

*Ins. Co. of New York* v. *Barnes*, 53 Ariz. 264, 88 P. 2d 533 (1939). This presumption may be overcome by proof that it was the intention of the spouses at the time of acquisition that the property should be the separate property of one or the other. This must be by clear and convincing evidence and the burden is on the one claiming that it is not community property. *Porter* v. *Porter*, 67 Ariz. 273, 195 P. 2d 132 (1948). In the latter case the Supreme Court of Arizona said:

There is a legal presumption in this jurisdiction that all property acquired by either spouse during coverture takes on a community character. This presumption can be rebutted only by "strong", "satisfactory", "convincing", "clear and cogent", or "nearly conclusive evidence". In this respect it differs from most legal presumptions that are dispelled immediately upon the production of any evidence negativing the presumption. The court must be satisfied that the property really is separate before it can state that the presumption has been dispelled. As long as there is any doubt, the property acquired during coverture must be presumed to be community property. In the case of Blaine v. Blaine, 63 Ariz. 100, 159 P. 2d 786, 790, the court said:

    *        *        *        *        *        *        *

"Where the claim is made that property purchased during the existence of a marriage is the separate property of one of the spouses, the fund with which such property was acquired must be clearly shown to have been the separate property of such spouse. No inference will be made against the community character or that the fund was separate, except under circumstances of a conclusive tendency. The presumption in favor of the community character of the property acquired during marriage may be overcome only by clear and cogent proof."

This seems to have been the holding of this court and other community property states consistently, and leaves no doubt as to the principle of law involved.

Petitioner points out that the certificate for the 15,500 shares "Certifies that Homer W. Forrester is the owner of" 15,500 shares of the capital stock of Apache, and that his then wife, Bernice, signed the certificate as secretary of the corporation, thus indicating her intent that the stock was to be considered as her husband's separate property. This was done on April 23, 1962, but 8 months later, on December 26, 1962, she executed and filed with the district director of internal revenue a shareholder's consent to election under section 1372(a) declaring under the penalty of perjury that she was the owner of the stock. This would seem to contravene petitioner's point of view. As the court in the *Lincoln Fire Ins. Co.* case *supra* said:

All property acquired by either spouse during coverture * * * is presumed community property of the two, no matter in whose name the title may stand. * * * [citing three cases]

Petitioner also makes a point that both Vanderlake and Woudenberg in assigning their shares of Apache to petitioner in 1963 assigned and transferred them "unto Homer W. Forrester, husband of Bernice L. Forrester as his sole and separate property." For the purposes of the

question before us, we are not concerned with these shares. We are only concerned with the 15,500 shares issued to petitioner on April 23, 1962. It is, therefore, immaterial whether the shares acquired in 1963 from Vanderlake and Woudenberg were or were not petitioner's sole and separate property.

The fact that the 15,500 shares issued to petitioner on April 23, 1962, were paid for partly with $9,500 of money petitioner borrowed from a bank on a nonsecured personal note and partly with $6,000 due petitioner as a commission does not establish that the 15,500 shares were petitioner's separate property. *Malich* v. *Malich*, 23 Ariz. 423, 204 P. 1020 (1922); *Barr* v. *Petzhold*, 77 Ariz. 399, 273 P. 2d 161, 167. In the *Malich* case a question was presented to the Arizona Supreme Court whether a certain building was the separate property of the husband or community property. The evidence at trial indicated that the building was paid for from borrowed funds and the trial court held the property was community. The Supreme Court, in affirming the trial court, said in part:

In holding this property a community asset the trial court was perhaps governed to some extent by appellant's statement that he borrowed the money to buy the lot and went in debt to erect the building, since property purchased on credit belongs to the community where it has not been acquired upon a pledge or mortgage of separate property, the consideration for it being merely the purchaser's obligation or promise to pay. Heney v. Pesoli, 109 Cal. 53, 41 Pac. 819; McKay on Community Property, § 208. A personal obligation or debt created by the husband during marriage is prima facie common, and necessarily property acquired in exchange for that obligation assumes a like character. Calhoun v. Leary, 6 Wash. 17, 32 Pac. 1070; McKay on Community Property, § 209.

Petitioner's testimony concerning the $6,000 is not too clear. It appears, however, that petitioner performed some type of personal service either directly for Apache or through another company, for which he became entitled to a commission paid in the form of 6,000 shares of Apache stock. Where doubt exists there is a strong presumption rebuttable only by clear and convincing evidence, that all earnings during coverture are community property. *Porter* v. *Porter, supra; Barr* v. *Petzhold, supra.*

In his complaint and amended complaint for divorce filed in 1964 and 1965, respectively, petitioner alleged that "the parties are the owners of the following community property" namely, 25,000 shares of Apache stock. On cross-examination petitioner was asked to explain these allegations. He replied:

A. I explain it as being an error in that Complaint. That Complaint is not accurate. As sworn to the best of my knowledge, I probably didn't read it. * * * I didn't care anything about this property * * * 25,000 shares of Apache Park Development Company, evidently I didn't care enough to make it accurate, because that was a complete washout. It's worth nothing.

On the basis of the record, we believe that the shareholder's consent to election filed by the wife and the recitals in the divorce complaints have positive evidentiary value in addition to the general presumption that the 15,500 shares of Apache stock acquired by petitioner on April 23, 1962, were the community property of petitioner and his then wife, Bernice. We so find and hold.

As stated in our footnote 2, subchapter S (secs. 1371–1377) was added to the Code on September 2, 1958. On September 22, 1958, temporary regulations relating to election of small business corporations were published in T.D. 6317, 1958–2 C.B. 1096, with the statement that "More comprehensive rules with respect to the subjects involved will be incorporated in subsequent regulations under the Act."

On September 23, 1959, Congress added subsection (c) to section 1371 by providing, for the purposes of determining whether a corporation had "more than 10 shareholders," that the stock owned by husband and wife in community "shall be treated as owned by one shareholder." Sec. 2(a), Pub. L. 86–376, 73 Stat. 699.

On December 15, 1959, T.D. 6432, 1960–1 C.B. 317 was approved. T.D. 6432 superseded T.D. 6317, *supra*, and provided in part as follows:

Sec. 1.1371–1(d)(2)(i). This subdivision applies only in determining the number of shareholders for purposes of section 1371(a)(1) and does not apply for purposes of any other provision of subchapter S of the Code. *Thus, for example, the husband and wife will each be considered a shareholder for purposes of section 1372(a), relating to the requirement that all shareholders consent to the corporation's election,* * * * [Emphasis supplied.]

Thereafter Congress, on May 4, 1961, added subsection (g) to section 1372, which dealt with consents to election by shareholders of stock held as community property and provided that "if either spouse filed a timely consent to an election under subsection (a) for a taxable year beginning before January 1, 1961, the time for filing the consent of the other spouse to such election shall not expire prior to May 15, 1961." Sec. 2, Pub. L. 87–29, 75 Stat. 64–65. See fn. 3, *supra*.

S. Rept. No. 163, *supra*, 1961–2 C.B. 351, accompanying Pub. L. 87–29, makes it clear, we think, that Congress was aware of respondent's position requiring consents from coowner spouses in community property States and constitutes an approval of this position. S. Rept. No. 163 states, in part:

The Committee on Finance added to the House-passed bill an amendment to extend to May 15, 1961, the period in which the spouse of a shareholder in a small business corporation may consent to an election not to be taxed as a corporation. The title of the bill was appropriately amended also.

Under subchapter S, certain small business corporations were permitted to elect not to be taxed as a corporation. The Treasury Department has taken the position that in the case of an election under this section in a community

property State, both husband and wife must make the election. In many situations in community property States, the husband operating as a small business corporation made the election but did not have his wife sign the document. Such elections the Treasury now holds are invalid, and as the elections had to be signed within a specified time, the period has expired in which the wife and the husband may now perfect the election. The amendment adopted by the Committee on Finance permits the spouse not signing the election additional time to sign the election. The extended date for perfecting such election is May 15, 1961.

If this amendment is not adopted, many small businessmen in community property States will not be able to take advantage of subchapter S, permitting certain small business corporations not to be taxable as corporations. The amendment only applies where a timely election in the first instance was made by one of the spouses.

In the instant case Apache was not incorporated until March 26, 1962, which was after all of the above statutes and regulations had come into existence. Apache issued its stock on April 23, 1962, and on the next day Form 2553 was filed, with accompanying shareholder's statements of consent from Vanderlake, Shafley, Woudenberg, and petitioner. Since we have held that the 15,500 shares issued to petitioner were the community property of petitioner and Bernice, the latter was also required, under section 1372(a), to file an election within the time mentioned in section 1372(c), which expired on May 22, 1962. See Income Tax Regs., sec. 1.1372–2 (a) and (b). Since Bernice did not file her consent until December 27, 1962, her filing was not timely. *Simons* v. *United States*, 208 F. Supp. 744 (D.Conn. 1962) ; *William Pestcoe*, 40 T.C. 195 (1963) ; *J. William Frentz*, 44 T.C. 485 (1965), affd. 375 F. 2d 662 (C.A. 6, 1967) ; and *Joseph W. Feldman*, 47 T.C. 329 (1966).[5]

Since the election under section 1372(a) was not effective for the year 1962, it was not effective for the year 1963, and petitioner is not entitled to deduct his distributive share of the net operating loss of $7,342.49. See fn. 1 and fn. 3, sec. 1372(d), *supra*.

Petitioner makes one other point. He argues that even if the 15,500 shares of Apache, here in question, be held to be community property, the election he made would be valid for the community "because as agent and head of the community by statute in Arizona, the husband had the right, power, privilege and authority to make, execute and deliver on behalf of the community all documents affecting its rights, which should include the right to elect how it is taxed."

Respondent does not dispute that under Arizona law the husband is manager of the community. He contends, however, the State law designating the husband as manager of the community cannot affect

---

[5] Neither party in any way suggests the applicability in this case of Income Tax Regs. sec. 1.1372–8(c) as amended by T.D. 6707, filed Mar. 9, 1964, which amendment was filed after the taxable years here involved.

.. 

508

the Federal tax law requiring that "both" spouses must sign the consents, citing *Burnet* v. *Harmel*, 287 U.S. 103 (1932), and *Commissioner* v. *Tower*, 327 U.S. 280 (1946). We agree with the respondent. Furthermore, there is no evidence that the petitioner purported to act for the community in filing his consent. In fact, a separate consent was filed by Bernice on December 27, 1962.

We hold, therefore, that the 15,500 shares of Apache stock were the community property of petitioner and his then wife during the years here in question; that both spouses were required to file timely consents; that the wife's consent was not timely; that Apache was not a validly elected subchapter S corporation; and that petitioner is not entitled to deduct in his individual return for 1963 any part of the net operating loss of Apache for the year 1963. Because of other issues conceded by respondent,

*Decision will be entered under Rule 50.*