[Civil No. 2115.  Filed November 21, 1923.]

[220 Pac. 232.]

## SAM CLARK, Appellant, v. M. G. LEVY, Appellee.

1. LANDLORD AND TENANT — SUBSEQUENT LEASE HELD NOT TO DEPRIVE LESSEE OF RIGHT TO PURCHASE GRANTED BY PRIOR LEASE.— Where subsequent lease was between the same parties and covered the same subject matter as a prior lease, and a memorandum, executed contemporaneously therewith, stated that "this arrangement in no way to change the conditions under which I leased to you the said lots and premises, *pro rata*," the subsequent lease did not deprive lessee of the right to purchase granted by the prior lease, since the two leases and the memorandum constituted but one transaction.

2. CONTRACTS—WHETHER SEVERAL INSTRUMENTS CONSTITUTE BUT ONE TRANSACTION DEPENDS ON PARTICULAR FACTS.—The question as to whether several instruments concerning the same subject matter should be construed as constituting but one transaction is always influenced by the surrounding facts and circumstances, and each case is largely controlled by its own peculiar facts.

APPEAL from a judgment of the Superior Court of the County of Pima.  Samuel L. Pattee, Judge. Affirmed.

Mr. John W. Mayes, for Appellant.

Mr. John B. Wright, for Appellee.

ROSS, J.—The appellant Clark brought this action against the appellee Levy to recover possession of 80 by 100 feet of the surface of what is known and re-

See 13 C. J., p. 528; 24 Cyc. 1022.

corded as the C. & A. No. 2 mining claim, situate in
the Ajo mining district, Pima county, and more par-
ticularly described as lot 3, block 3, and lot 2 in
block 4, according to survey and plat of said mining
claim made by one W. C. Goetz, and dated March 13,
1916. It is alleged defendant was let into possession
of said premises on February 7, 1916, under written
lease which is set out in the complaint; that defend-
ant paid his rent until February 7, 1921, on which
date the lease expired; that written demand for pos-
session was made on May 5, 1921, and defendant
refused to surrender possession. The material terms
of the lease set out in the complaint will be stated
as necessary and as we proceed.

The defendant's defense as set forth in his answer
is that the lease set out in complaint is the second
one entered into between plaintiff and defendant;
that although it was executed on April 8th, it was
given the date of the first lease (February 7th); that
the first lease was of the surface of three lots and
gave to defendant the right to purchase in the follow-
ing language:

"And at the expiration of said term the party of
the second part shall have the privilege of buying
the premises herein described for the sum of three
thousand dollars. Or at such time as the herein
named mining claim is patented. Or any one of said
lots for one thousand dollars each."

Defendant alleges:

That plaintiff represented to him as inducement to
enter into the second lease that he had caused to be
printed forms of lease which he would like to make
uniform with all his tenants occupying lots on said
mining claim, according to the survey and plat by
said Goetz, and that at the same time plaintiff made
the following written proposition to defendant:
"M. G. Levy:

"If you deed back to me one of the three lots I
leased to you, I will pay you seventy-five dollars; this

arrangement in no way to change the conditions under which I leased to you the said lots and premises, *pro rata*.

[Dated] "April 8, 1916.

[Signed] "SAM CLARK."

That the reason this memorandum was exacted and given was that the new form of lease conditioned defendant's right to purchase said premises upon the mining claim being patented before the expiration of the lease, and that he was not satisfied therewith, but wanted the right and option to purchase as in first lease.

Defendant further alleges, that believing that his lease and said memorandum gave him the right and privilege to purchase at the expiration of his term, he placed upon said premises improvements at a cost to exceed $6,000; that he had offered to purchase and pay for said lots the prices stipulated in lease, and that he had offered to pay plaintiff rent or lease money for extension of lease, but that plaintiff had refused to sell and convey lots to him and had refused to extend his lease. Plaintiff demurred generally to the answer which demurrer was overruled. The case was tried to the court without a jury, and resulted in favor of defendant. From the judgment plaintiff appeals and assigns several errors, all directed to the proposition that the second lease, as a matter of law, superseded the first lease as also all other agreements or understandings between the parties.

The plaintiff and defendant both testified, and gave in detail the facts and circumstances leading up to the execution of the first lease, and also their understanding as to why the new lease and memorandum were executed, without any objection whatever from either side. Plaintiff's wife, who was active in negotiating the lease and arranging its terms and modifications, also testified fully as to her understanding of the several writings. It was the contention of

plaintiff that the new lease, being the last written
expression of their agreement, canceled and took the
place of all other prior agreements or contempo-
raneous ones, and that the court should have so ruled
as a question of law. It is the contention that the
facts place the case within the rule laid down by this
court in *Arizona-Parral Min. Co.* v. *Forbes,* 16 Ariz.
395, 146 Pac. 504. We think, however, the facts of
the cases widely differ. Here the three instruments
not only covered the same general subject matter but
plainly are interrelated and dependent upon each
other to some extent, at least for their vitality. The·
last lease, although executed some sixty days later
than the first, was given the date of the first, and
contemporaneously with its execution and as a part
of the same transaction the memorandum stating,
"This arrangement in no way to change the condi-
tions under which I leased to you the said lots and
premises, *pro rata,*" was given to defendant. Both
parties explained their understanding of this some-
what ambiguous writing. Defendant stated its pur-
pose was to save to him his right to purchase the two
lots left in second lease at the same price per lot
as stipulated in the first, and that the rent for the
remainder of the term should be at the same rate per
lot as in the first lease, and that instead of changing
his right or option to purchase it was intended to
preserve that right. He would construe the side
agreement as follows:

"This arrangement in no way to change the condi-
tions under which I leased to you the said lots and
premises, except that there shall be deducted from
the rent one-third and in case of a purchase one-third
of the total purchase price or a pro rata deduction
of one-third, since one lot out of the three in original
lease was dropped from second lease."

That this would be the meaning of side agreement
without the words *"pro rata"* seems quite certain,

and, since these words have reference to an apportionment according to certain percentages (32 Cyc. 685), the defendant's contention seems very reasonable. Plaintiff's contention was that the memorandum was only temporary in its purpose and its stipulations were superseded by the second lease, and, the second lease not having preserved his right to purchase at the expiration of his term, he had no such right.

In respect to renewals, both leases were alike, and there was no such right after the expiration of the five-year term. It was stipulated the lessee might remove his improvements within twenty days after expiration of lease, and failing to do so they became the property of lessor. The defendant put upon the lots a storehouse, thirty-eight feet by sixty feet, a four-room dwelling, a hotel of seventeen rooms, lobby, kitchen, etc., the same being a two-story building, and furnished it—all at a total outlay exceeding $9,000. If plaintiff's contention is right, the only way defendant could save these improvements was to remove them within twenty days after his term of lease expired. It does not seem reasonable that a business man would have made so extensive improvements without feeling assured that he could save them by buying the lots at the expiration of his lease. The learned trial judge held:

That the "three instruments were in effect one, since it was shown that their effect was to continue in force the provisions of the first lease. . . . One of the provisions of the first lease, thus kept alive by the subsequent transaction, granted the defendant the option to purchase the leased premises at a certain price at the expiration of the lease."

The question as to whether several instruments concerning the same subject matter should be construed as constituting but one transaction is always influenced by the surrounding facts and circum-

25 Ariz.—35

stances and each case is largely controlled by its own peculiar facts. 13 C. J. 528, § 487.

The trial court further found that the defendant offered to exercise the option and to pay the purchase price agreed upon, but was met with an absolute refusal to accept such price or to make conveyance of the property. Plaintiff contends that this finding is not supported by the evidence. The evidence, however, quite strongly indicates that the plaintiff was very much more anxious to get the improvements than the purchase price of the lots, and we think fully sustains the court's finding.

The judgment of the lower court was one dismissing the action, but without prejudice to any further action plaintiff might desire to institute.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LYMAN, J., concur.