380 P.2d 148

**J. M. SMITH and Winnie E. Smith,**
**his wife, Appellants,**

**v.**

**Warren R. NEELY and Revy Neely,**
**his wife, Appellees.**

**No. 6975.**

Supreme Court of Arizona.

En Banc.

March 27, 1963.

Rehearing Denied April 16, 1963.

Hughes & Hughes, Phoenix, and Wilford R. Richardson, Safford, for appellants.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for appellees.

GARRETT, Superior Court Judge.

This is an action for specific performance of a contract to sell land. Performance was ordered by the trial court. The seller-defendant has appealed, contending first, the plaintiff is barred by the doctrine of unclean hands, and second the contract enforced below was replaced by a second and different agreement.

The facts are that plaintiffs in 1954 took a lease with option to buy on certain land belonging to the defendants. The physical paper on which this arrangement was made was a single document. The option provision was to be exercised by January 15, 1958.

The plaintiff paid his rent and made considerable improvements, the parties living under the agreement without untoward event until 1957. In 1957 the Bureau of Internal Revenue began to look into the taxes of plaintiff. The interest of the Internal Revenue Department was general, but it included a concern with the deduc-

tions which the plaintiff was making for rent; for if the payments were capital investment instead of rent they would not be deductible as a business expense.

At this point plaintiff apparently decided that he would be better off if his lease and option were in two separate documents rather than one. Hence, in 1957 a new document was written and dated 1954, keeping the rental provisions but omitting the option provisions. This 1957 truncated rewrite was shown by the plaintiff to the Internal Revenue Department, a bit of fancy work which led to the conviction of the plaintiff in the Federal courts for having made a false statement to the Federal government; see Neely v. United States, 300 F.2d 67 (9th Cir., 1962). Plaintiff's Federal conviction was in substance a holding that he had misled the Federal government by denying the existence of an option when in fact he had one.

The writing of the document for presentation to the Federal government came in 1957. The Federal criminal proceedings came much later. Plaintiff continued full payment as provided in the original agreement and when the option time arrived in 1958, plaintiff sought to exercise his option and the defendants refused to give title. Plaintiffs thereupon brought this action for specific performance on the 1954 option agreement.

The substance of the clean hands defense is that plaintiff cannot specifically enforce the 1954 contract because in 1957 he represented to the tax collector that he had a lease and not an option to purchase.

■■ It is not for the defendant to take advantage of the consequences of plaintiff's trouble with the Internal Revenue Department. The general rule is that "for the doctrine of clean hands to apply to bar a claim, it is necessary that the act of unconscionable conduct on the part of the plaintiff relate to the very activity that is the basis of his claim." Barr v. Petzhold, 77 Ariz. 399, 407, 273 P.2d 161, 166.

We have also quoted with approval the following language from 2 Pomeroy 95, Equity Jurisprudence 5th Ed., Sec. 399 in Sines v. Holden, 89 Ariz. 207, 210, 360 P.2d 218, 220:

"'The rule does not go so far as to prohibit a court of equity from giving its aid to a bad or a faithless man or a criminal. The dirt upon his hands must be his bad conduct *in the transaction complained of*. If he is not guilty of inequitable conduct *toward the defendant* in that transaction, his hands are as clean as the court can require.'"

(Emphasis supplied)

We find no evidence that the plaintiff was guilty of any bad conduct toward the defendant in this transaction.

■ The right of Neely to enforce his agreement supported by consideration, is not defeated because the 1957 document was

drawn in such a form as to evade taxes. Intent to evade taxes is collateral to the contract,[1] 2 Pomeroy's Equity Jurisprudence, 5th Ed. Sec. 401 d; 21 A.L.R. 396; Geisen v. Karol, 86 Ind.App. 653, 159 N.E. 469.

■ Error is assigned as to the exclusion of certain evidence. This evidence goes to the issue of whether the 1954 agreement was drafted with an eye to its tax consequences and therefore plaintiffs' hands are unclean. In view of our decision this evidence was not admissible.

■ The second question is whether the 1957 document replaced the 1954 agreement. The heart of the matter is that whether the 1957 document is to be regarded as a surrender of the 1954 agreement is a matter of the intent of the parties, Peterson v. Betts, 24 Wash.2d 376, 165 P.2d 95. Because this is a question of intent it has been held by this court to be a question of fact, Clark v. Levy, 25 Ariz. 541, 220 P. 232.

■ Intent is to be derived from an examination of all the surrounding facts and circumstances, McClave v. Electric Supply, 92 Ariz. ——, 379 P.2d 123; Clark v. Levy,

supra. There was evidence from which the trial judge could have concluded that the property was worth a great deal more than the option price. Thus, a deletion of the option to repurchase would result in a windfall for defendants and a severe loss to the plaintiff. The 1957 document was never properly acknowledged as required by A.R.S. § 33–401.[2] The defendant did not keep a copy of the 1957 document and the 1957 document was so dated as to make it appear that it had been executed in 1954. The plaintiff testified that the reason he wanted the 1957 document executed (with the 1954 date) was because the Bureau of Internal Revenue was auditing his tax returns. The defendant testified he would execute the document if he could do so without getting in trouble with the Internal Revenue Bureau.

■ From these facts and circumstances the trial judge decided the parties did not intend to abandon the 1954 agreement and that the option provision was operative. Where a trial judge has heard the evidence and the testimony with an opportunity to observe the witnesses we will not reverse him if there is evidence to support his conclusion. Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260.

---

1. This, of course, is what distinguishes this case from MacRae v. MacRae, 37 Ariz. 307, 294 P. 280 and MacRae v. Betts, 40 Ariz. 454, 14 P.2d 253.

2. We do not discuss the effect of A.R.S. § 33–401 on the validity of the 1957 document because the point was not argued by the parties, but this is certainly one of the facts and circumstances which the trial judge could consider.

On this record the trial court was entitled to conclude as a matter of fact that the parties at all times intended to keep the 1954 option in full force and effect. On this assumption, the agreement was specifically enforceable.

The judgment of the trial court is affirmed.

BERNSTEIN, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

NOTE. Justice UDALL, having disqualified himself, the Honorable LEE GARRETT, Judge of the Superior Court of Pima County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

JENNINGS, Justice (dissenting).

I am compelled to disagree with the majority.

The majority opinion holds that the case turns upon the intent of the parties, and they affirm the trial judge in his finding that Smith and Neely did not intend the option in the 1954 lease to be surrendered by execution and acceptance of the 1957 agreement. To reach this conclusion, one must ignore the direct testimony in the record and rely upon a curious chain of circumstantial inferences.

Smith testified on cross examination:

"Q. And at that time, as to your state of mind, you wanted to do the thing Mr. Neely wanted done if it fit your picture, isn't that true?

"A. If he wanted—

"Q. Separate lease.

"A. If he wanted a new lease, I was ready under the advice of my attorney to give him one.

"Q. You mean to tell this Court that you needed the advice of a lawyer in order to surrender an option?

"A. Yes.

"Q. For Mr. Neely to surrender his option, you had to see a lawyer?

"A. When it is fooling with tax matters."

And again, on redirect:

"Q. Did you intend to be bound by that lease agreement when you signed it?

"A. The last one?

"Q. Yes.

" * * * [objection]

"A. Yes.

*    *    *    *    *    *

"Q. At that time did you intend to execute a new agreement which deprived Mr. Neely of an option?

"A. Yes."

In addition to this direct testimony as to what at least one of the parties intended, there was testimony by both Smith and Neely that neither discussed whether the option was to continue or to be surrendered. In the words of Neely:

"There has never, never to my knowledge, been one word mentioned about the option on this place.

"Q. Between you and Mr. Smith?

"A. Between me and Mr. Smith or anyone else."

The facts upon which the trial court based its finding of intent are these: Neely came to Smith and requested that he sign a new agreement which Neely had prepared containing the lease agreement without the option provisions. Neely indicated that he was having tax difficulties. Nothing was said about the continuance or termination of the option. Smith agreed to sign the agreement after seeking the advice of counsel.[1]

There are at least two possible inferences from this evidence. One is that the parties intended the agreement to accomplish a surrender of Neely's troublesome option, that is, that Neely was willing to release the option to bail himself out of a bad situation with the tax service. Another possible inference is that the parties intended the agreement to be a sham instrument designed to deceive the treasury department agents, and that Smith, with no possible benefit in it for himself, and after consulting his attorney, thought it was perfectly all right for him to participate in this little scheme. This is the alternative inference that the trial court, and the majority of this court have accepted and in the face of directly contradictory testimony by Smith. Their decision seems almost to rest upon a presumption that, when faced with tax difficulties, men will try to deceive the revenue agents, and lawyers will advise them to do so.[2]

In situations like this, where inferences from the surrounding circumstances are at best highly equivocal the proper rule seems to me to be that expressed in C.J.S.:

*"In the absence of an expression of an intention to the contrary*, the acceptance by the tenant of a new lease for the same premises from the lessor during the term of the first lease constitutes a surrender by operation of law." 51 C.J.S. Landlord and Tenant § 124 c. (Emphasis added.)

---

1. The majority opinion mentions that Smith did not keep a copy of the 1957 agreement, but fails to point out that Neely gave his copy of the 1954 agreement containing the option provisions to Smith, and did not seek to recover it until the commencement of this litigation.

2. Testimony as to the advice given to Smith by his lawyer which was offered to show Smith's intent in executing the 1957 agreement and which was admissible for his non-hearsay purpose, was nevertheless excluded in the trial court.

Since both Smith and Neely agreed that no expression was given to indicate the option would continue, acceptance by Neely of the 1957 agreement constituted surrender of the 1954 agreement. It follows that Neely could not thereafter enforce the option provisions of the earlier agreement. I would reverse the judgment of the lower court and enter judgment in favor of the appellant.