IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

COLETTE MCNALLY, an individual, *Plaintiff/Appellant*,

*v.*

SUN LAKES HOMEOWNERS ASSOCIATION #1, INC., an Arizona non-profit corporation, *Defendant/Appellee*.

No. 1 CA-CV 15-0744
FILED 10-13-2016

———————————————

Appeal from the Superior Court in Maricopa County
No.  CV2014-009496
The Honorable James T. Blomo, Judge

**REVERSED AND REMANDED**

———————————————

COUNSEL

Cheifetz Iannitelli Marcolini PC, Phoenix
By Steven W. Cheifetz and Jacob A. Kubert
*Counsel for Plaintiff/Appellant*

Grasso Law Firm PC, Chandler
By Robert Grasso, Jr. and Stephanie L. Samuelson
*Counsel for Defendant/Appellee*

———————————————

**OPINION**

Presiding Judge Andrew W. Gould delivered the opinion of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

———————————————

**G O U L D**, Judge:

**¶1**         In September 2013, the Board of Directors of Sun Lakes Homeowners Association #1 (the "Association") passed a motion excluding Colette McNally, a duly-elected member of the Board, from attending the Board's executive sessions.  McNally filed an application for a preliminary injunction seeking to compel the Board to allow her to attend its executive sessions.  The superior court denied McNally's application.  We conclude the Board lacked authority to exclude McNally from its executive sessions, and therefore reverse.

## FACTS AND PROCEDURAL HISTORY

**¶2**         The Association is a non-profit corporation that maintains and operates a community restaurant, golf course, and other facilities for the residents of Sun Lakes.  The Association is managed by a seven-member Board.  Members of the Board are elected by Association homeowners for three-year terms.  The Board's meetings are open to residents, with the exception of its executive sessions, which are closed to residents.

**¶3**         In 2011, McNally was elected to a three-year term on the Board.  In August 2013, Jeannie Martens, a former Association employee, sent McNally and three non-Board members an e-mail.  In her e-mail, Martens accused Association General Manager Clint Warrell and Human Resources Manager Roberta Laird of misconduct.  The next day, McNally forwarded Martens' e-mail to Rick Schwartz, Board President.  McNally also sent an e-mail to Schwartz alleging additional misconduct by Warrell and Laird; she demanded they resign or be dismissed.

**¶4**         The Board met in two special executive sessions to discuss Martens' email and McNally's allegations.  At both sessions, Schwartz advised the Board that he had discussed Martens' e-mail with Charles Maxwell, the Association's attorney.  According to Schwartz, Maxwell recommended the Board (1) take no action on Martens' e-mail, and (2) avoid any further publication of the e-mail.  As a result, during the September 4, 2013, executive session, the Board adopted a resolution disavowing "any approval of or responsibility for any of [] McNally's emails maligning Clint Warrell," and stating that if Warrell sued the Board or the Association, "the [A]ssociation will make the resolution available to the judicial system to reduce or eliminate liability and place it upon the responsible party."

**¶5**         Following the September 4 executive session, the Board reconvened in open session.  During the open session, McNally began

reading Martens' e-mail to the Association members in attendance. Schwartz asked McNally to stop reading the e-mail, but when she refused, he abruptly adjourned the meeting.

¶6  A week later, the Association's attorney sent McNally a letter stating that her conduct during the September 4 open session violated her duties of confidentiality and loyalty to the Association. The attorney also stated he was recommending the Association exclude McNally from participating in future executive sessions.

¶7  On September 20, 2013, the Board approved a motion banning McNally from all executive sessions for the balance of her term. McNally's term ended in February 2014, but she was re-elected to a second term expiring in February 2017. After McNally's re-election, the Board offered to allow McNally to participate in executive sessions if she agreed to keep matters discussed in executive sessions confidential; she refused.[1]

¶8  Following her re-election, McNally filed a lawsuit against the Association, asserting claims for declaratory/injunctive relief, breach of contract, defamation, false light, and punitive damages. In her prayer for injunctive relief, McNally sought an order compelling the Association to comply with applicable open meeting laws and allow her to participate in executive sessions. *See* Ariz. Rev. Stat. ("A.R.S.") section 33-1804(A) (stating that board meetings for homeowners' associations must be open to association members).

¶9  Following her complaint, McNally filed an application for a preliminary injunction seeking to compel the Board to allow her to participate in executive sessions. The court denied the application after an evidentiary hearing. McNally timely appealed.

## DISCUSSION

¶10  McNally argues the superior court erred in denying her application for a preliminary injunction. Specifically, McNally contends the Board did not have the authority to exclude her from executive sessions, and that by doing so, it constructively removed her from the Board.

---

[1] McNally testified she was unwilling to accept the Board's offer because it included a requirement she admit to wrongdoing regarding Martens' e-mail.

¶11　　　　We review a court's decision to deny a preliminary injunction for an abuse of discretion. *Shoen v. Shoen*, 167 Ariz. 58, 62 (App. 1990) (citations omitted). "We defer to the court's factual findings unless clearly erroneous, but review its legal decisions de novo." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 64, ¶ 5 (App. 2011). A court abuses its discretion when, in exercising its discretion, it commits an error of law. *Grant v. Ariz. Public Service Co.*, 133 Ariz. 434, 456 (1982).

¶12　　　　The superior court abused its discretion in denying McNally's application for a preliminary injunction. Neither Arizona law nor the Association's bylaws authorized the Board to pass a motion excluding McNally from all executive sessions. To the contrary, by passing the motion, the Board prevented McNally from performing her duties and responsibilities as a director.

¶13　　　　As a member of the Board, Arizona law requires McNally to participate in managing the affairs of the Association. A.R.S. § 10-3801(B); *see also* A.R.S. § 10-801(B) ("All corporate powers shall be exercised by or under the authority of and the business and affairs of the corporation shall be managed under the direction of its board of directors."). Additionally, the Association's bylaws require McNally to participate in managing the affairs of the Association. *Cf.* A.R.S. § 10-2064 (stating the "bylaws [of a homeowners' association] shall set forth the rights and duties of members and directors").

¶14　　　　Participating in executive sessions was critical to McNally performing her duties as a director. Pursuant to A.R.S. §§ 33-1804(A)(1) - (5), directors of a homeowners' association are permitted to discuss a wide variety of important matters in executive session, including: legal advice from an attorney; pending or possible future litigation involving the association; personal, health, or financial information about association members, employees, or contractors; and job performance, compensation, health, and complaints regarding association employees. Indeed, during McNally's term, the Board frequently held executive sessions to discuss important matters such as the Association's budget, members' code of conduct, remodeling projects, creation/elimination of staff positions, and hiring a general manager. However, based on the Board's motion, McNally was not allowed to participate in any of these discussions.

¶15　　　　McNally's duty and right to attend all Board meetings, including executive sessions, is protected by the notice requirements contained in A.R.S. § 10-3822(B) and the Association's bylaws. Under the bylaws, when special meetings of the Board are called, "[n]otice of such

meetings shall be given to all Directors not less than twenty-four (24) hours before the meeting time and shall state the purpose of the meeting." Additionally, A.R.S. § 10-3822(B) requires that all directors of nonprofit corporations be notified of special meetings two days prior to the meeting, unless otherwise provided by the articles of incorporation or bylaws.

**¶16** These notification requirements also serve a practical purpose: they guarantee the participation of all board members in managing the affairs of a corporation. As one commentator has noted, "Notice to all directors is required because when a number of directors are elected to manage the affairs of the corporation, it is contemplated that the corporation shall have the benefit of the judgment, counsel and influence of all of those directors." 2 William Meade Fletcher et al., *Fletcher Cyclopedia of Law of Corporations* § 406 (perm. Ed., rev. vol. 2014). Thus, "A special meeting held in the absence of some of the directors and without any notice to them, is illegal except in those cases where the articles of incorporation, bylaws, or established custom so provide, or where it is impossible or impractical to give notice." *Id.*

**¶17** The Association argues, however, that the Board had the authority to screen McNally from its executive sessions by creating a special committee pursuant to A.R.S. § 10-3825. Under this statute, a board of directors may create "one or more committees," and authorize such committee members to "exercise the authority of the board of directors." According to the Association, the Board's motion excluding McNally effectively created a special committee, consisting of all Board members except McNally, to discuss privileged matters in executive session.

**¶18** There is no evidence in the record showing the Board created a special committee pursuant to A.R.S. § 10-3825. Moreover, even if the Board had created such a committee, it could not have done so for the sole purpose of excluding McNally from its executive sessions. A board's authority to create special committees under A.R.S. § 10-3825 must be interpreted in light of its place in the relevant statutory scheme. *See Hosea v. City of Phoenix Fire Pension Bd.*, 224 Ariz. 245, 250, ¶ 23 (App. 2010) (citations omitted) (holding that statutory provisions are construed in light of their place in the statutory scheme, so that provisions may be harmonious and consistent). A.R.S. § 10-3801, which is contained in the same chapter as A.R.S. § 10-3825, provides that a director has a legal duty and obligation to manage the affairs of a corporation. However, under the Association's interpretation of A.R.S. § 10-3825, A.R.S. § 10-3801 is rendered meaningless, because a majority of a board could simply strip a director of

her ability to manage the corporation's affairs by creating a special executive session committee.

¶19    The Association also contends that because McNally refused to keep executive session information confidential, excluding her from executive sessions was the "only practical option available," and therefore a reasonable exercise of its discretionary powers. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 201-02, ¶¶ 24-28 (App. 2007) (holding that members challenging discretionary decisions of a homeowners' association are required to show the association's actions were unreasonable). We disagree.

¶20    Because McNally is a duly-elected director, the Board did not have the discretionary power to exclude her from all of its executive sessions. Instead of resorting to an unlawful self-help remedy, the Association could have taken other courses of action to protect confidential information. For example, the Association could have sought to remove McNally from the Board by filing a judicial removal action. *See* A.R.S. § 10-3810(A) (an action to remove a director may be commenced "either by the corporation or by its members . . . if the court finds . . . [t]he director engaged in fraudulent conduct or intentional criminal conduct with respect to the corporation. . . [and] [r]emoval is in the best interests of the corporation.").[2] The Association also could have sought an injunction prohibiting McNally from disclosing confidential information discussed in executive session. *Cf. State ex rel. Moore v. State Bank of Hallsville*, 561 S.W.2d 722, 725 (Mo. Ct. App. 1978) (holding that a court may temper a bank director's right to inspect bank records by imposing conditions designed to avoid unreasonable or oppressive interference or disruption of corporate business); *Hyman v. Jewish Chronic Disease Hosp.*, 15 N.Y.2d 317, 322-23, 206 N.E.2d 338, 339 (1965) (holding that order enforcing hospital board member's right to inspect hospital records may be coupled with necessary safeguards and protections to avoid disclosure of confidential information).

¶21    Next, the Association argues that McNally was barred from seeking injunctive relief under the doctrine of "unclean hands." *Smith v. Neely*, 93 Ariz. 291, 293 (1963) (internal citations omitted) (stating the

_____

[2]    A.R.S. § 10-3808(A) also provides that a director may be removed "pursuant to any procedure provided in the articles of incorporation or bylaws." Based on the Association's amended bylaws adopted February 21, 2011, the Board does not have the authority to remove Board members; rather, Board members may only be removed pursuant to a recall election.

doctrine of unclean hands bars a party from obtaining equitable relief for an act "of unconscionable conduct" that relates "to the very activity that is the basis of [its] claim."). Specifically, the Association claims that McNally had "unclean hands" because she read the Martens e-mail in open session "in knowing and willful disregard of the advice of the Association's general counsel, contrary to the consensus of her fellow Board members, and to serve her own personal interests."

¶22        In its ruling, the superior court did not reach the issue of whether McNally's application was barred by the doctrine of unclean hands. However, even if McNally had unclean hands, this would not have provided grounds to deny the preliminary injunction, because the Board did not have lawful authority to pass a motion barring her from all of its executive sessions. *See supra*, ¶¶ 12-16.

¶23        Accordingly, we conclude the superior court erred in denying McNally's application for a preliminary injunction. Because the Board had no authority to ban McNally from its executive sessions, the court should have directed the Association to allow her to attend and participate in the Board's executive sessions.

¶24        We stress that our holding is limited to the facts and circumstances of this case. To be clear, a board may, in certain circumstances, request that a director recuse herself from an executive session. Additionally, there are situations where a board may be warranted in obtaining a court order excluding a director from an executive session. For example, it may be necessary to exclude a director from an executive session addressing the director's conflict of interest, alleged misconduct, or potential litigation involving the director. However, these potential circumstances have not been presented to us in this case.

¶25        Finally, McNally claims the superior court erred when it declined to enter an injunction prohibiting the Association from violating the open meetings law. *See* A.R.S. § 33-1804(A) (homeowners' association open meetings law).

¶26        In her application, McNally requested the court enter an injunction "allowing her to participate in executive sessions." Although the application also requested a hearing regarding McNally's "claim contained in Count One of her Verified Complaint," which included a prayer for injunctive relief regarding the open meetings law, the court concluded this request was not properly raised in the application. *See* Ariz. R. Civ. P. 7.1(a)

("[a]ll motions. . . shall be accompanied by a memorandum indicating, at a minimum, the precise legal points, statutes and authorities relied on…").

**¶27** We find no abuse of discretion. *See Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17 (App. 2004) (court rulings made under Rule 7.1 are reviewed for an abuse of discretion). The application clearly seeks relief regarding McNally's exclusion from executive session; it makes only one passing, indirect reference to an injunction regarding the open meetings law. *See Blumenthal v. Teets*, 155 Ariz. 123, 131 (App. 1987) (statement "in the last sentence of [appellant's] response to [appellee's] motion to dismiss" requesting leave to amend was not a proper motion to amend the complaint because it did not comply with the procedural rules; as a result, the trial court did not err in denying plaintiff's motion to amend the complaint). Additionally, McNally is not barred from seeking injunctive relief upon filing a proper application.

## Attorneys' Fees

**¶28** McNally requests an award of attorneys' fees pursuant to A.R.S. § 12-341.01 for the preliminary injunction proceedings in superior court, as well as her fees on appeal. *See id.* ("[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees.").

**¶29** Because McNally's claim arises from a contract and she has successfully challenged the superior court's denial of her application for a preliminary injunction, we grant her request for reasonable fees on appeal. *See Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 320, ¶ 27 (App. 2011) (internal citations omitted) (the articles of incorporation and bylaws governing a private organization constitute a contract between members and the organization). However, because the majority of McNally's claims, including her multiple claims for injunctive relief, remain unresolved, we deny without prejudice her claim for fees related to the injunction proceedings in superior court. The superior court may re-examine this issue at the conclusion of the case to determine whether she qualifies as the prevailing party. *See Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13-14, ¶ 22 (App. 2011) (stating trial court has discretion in case involving multiple claims to determine who is the "net winner" or who is the prevailing party based on the "totality of the litigation test.").

## CONCLUSION

**¶30** For the above reasons, we reverse the superior court's order denying McNally's application for a preliminary injunction, and direct the

court to enter a preliminary injunction compelling the Association, during the pendency of this case, to allow McNally to participate in the Board's executive sessions. Further, as the prevailing party on appeal, we award McNally her reasonable attorneys' fees and costs incurred on appeal. Finally, we deny without prejudice McNally's request for fees related to the preliminary injunction hearing, leaving this matter to the superior court to determine whether, at the conclusion of this case, McNally qualifies as a prevailing party.

