MORSE, Judge:
¶ 1 Michael Dunn ("Dunn") appeals the superior court's order of dismissal of his Verified Complaint ("Complaint") without prejudice for improper venue pursuant to a contractual forum-selection clause. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2 Dunn is a doctor who held an ownership interest in Urgent Cares of America Holdings I, LLC ("Urgent Cares"). In May 2015, Dunn signed a Letter of Transmittal ("LOT") in which he sold his interest in Urgent Cares to FastMed Holdings, LLC, and agreed to be bound by a Purchase Agreement and Plan of Merger ("Purchase Agreement"). The Purchase Agreement involved multiple parties and more than $200,000,000 in total consideration.
¶ 3 Upon the closing of the Purchase Agreement transaction, Dunn received $1,000,000. The LOT specified that the payment was in exchange for (1) Dunn's ownership interest, including goodwill, in Urgent Cares; (2) his consent and agreement to the Purchase Agreement, which selected Delaware's governing law and forum; and (3) a covenant not to compete with the business for five years after the closing of the Purchase Agreement.
¶ 4 In June 2015, after the Purchase Agreement transaction closed, Dunn entered a Second Amended and Restated Employment Agreement ("Second Employment Agreement") with FastMed Urgent Care, P.C. ("FastMed"). The parties both describe FastMed as an entity that resulted from the Purchase Agreement transaction. The Second Employment Agreement included a six-month non-competition covenant following termination of employment. Dunn later resigned from FastMed and in September 2015, Dunn and FastMed entered a "Separation Agreement" to "settle[ ] [ ] matters relating to the end of [Dunn's] employment" with FastMed. The Separation Agreement expressly incorporated the six-month non-competition provision of the Second Employment Agreement and provided that all disputes arising out of the Separation Agreement be brought in Arizona and interpreted according to Arizona law.
¶ 5 In August 2016, Dunn accepted an executive employment offer from Banner Health. Once FastMed learned of Dunn's employment, it informed Banner Health and Dunn that his prospective employment would breach the contractual five-year non-competition provision contained within the LOT. In response, Dunn claimed that the Separation Agreement, which contained an integration clause, superseded the LOT and that Dunn was subject only to the expired six-month non-competition provision contained within the Second Employment Agreement. Due to the parties' dispute, Banner Health withdrew its employment offer to Dunn.
¶ 6 In September 2016, Dunn filed a Complaint against Appellees, alleging breach of the Separation Agreement and related contract and tort claims. Dunn requested declaratory *439 relief in the form of an order from the superior court "that the restrictive covenant in the Letter of Transmittal was superseded by the restrictive covenant and integration clause agreed upon in the" Separation Agreement. Dunn also sought to enjoin Appellees from "improper application of the alleged restrictive covenant," and requested punitive damages and attorneys' fees and costs pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-341.01 and 12-349.
¶ 7 Appellees moved to dismiss the Complaint, pursuant to Arizona Rules of Civil Procedure 9(b) and 12(b)(6), arguing that the Purchase Agreement, to which Dunn had assented in the LOT, provided that Delaware was the exclusive forum for the action. Dunn opposed the motion to dismiss, arguing that the Separation Agreement superseded the LOT and Purchase Agreement.
¶ 8 The superior court found in favor of Appellees and dismissed the Complaint without prejudice, allowing Dunn the opportunity to refile the action in Delaware, and awarded Appellees their attorneys' fees and costs. Dunn timely appealed.
DISCUSSION
I. JURISDICTION
¶ 9 The superior court certified, pursuant to Rule 54(c), that the judgment was final as to all claims and parties. Despite the certification, we generally do not have appellate jurisdiction when a case is dismissed without prejudice. McMurray v. Dream Catcher USA, Inc. , 220 Ariz. 71, 74, ¶ 4, 202 P.3d 536, 539 (App. 2009). This situation presents an exception to that general rule. Dismissal pursuant to a forum-selection clause with leave to refile in another state is an appealable order under A.R.S. § 12-2101(A)(3). See Dusold v. Porta-John Corp. , 167 Ariz. 358, 361, 807 P.2d 526, 529 (App. 1990) (finding appellate jurisdiction under predecessor to A.R.S. § 12-2101(A)(3)"to consider at least the dismissal and jurisdictional aspects of the trial court's order (transfer of arbitration to Michigan)"); see also Russo v. Barger , 239 Ariz. 100, 103, ¶¶ 9-10, 366 P.3d 577, 580 (App. 2016) (finding appellate jurisdiction after dismissal based on a forum-selection clause).[1]
II. STANDARD OF REVIEW
¶ 10 Contract interpretation is a question of law we review de novo. Grosvenor Holdings, L.C. v. Figueroa , 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009). We construe a contract to determine and enforce the parties' intent. Taylor v. State Farm Mut. Auto. Ins. Co. , 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). We consider the plain meaning of the words in the context of the contract as a whole. United Cal. Bank v. Prudential Ins. Co. of Am. , 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983).
III. THE MOTION TO DISMISS AND ORDER OF DISMISSAL
A. The Separation Agreement Does Not Supersede the Letter of Transmittal and Purchase Agreement
¶ 11 Dunn advances two primary arguments against the superior court's decision to apply the forum-selection provisions of the Purchase Agreement. First, he argues that the superior court erred in considering the Purchase Agreement under Rule 12(b) because it was not "a part of" the Complaint. Second, Dunn argues that the superior court "ignored the plain language of the Separation Agreement," which he contends "clearly superseded all prior agreements between the parties, including the choice of forum terms set forth in all prior agreements." We address these arguments in turn.
¶ 12 First, although the Purchase Agreement was not appended to the Complaint, the Purchase Agreement is integral to, and referenced within, the Complaint and other appended documents. Further, the LOT, which is attached to the Complaint, expressly incorporates the Purchase Agreement. Thus, contrary to Dunn's argument, the Purchase *440 Agreement was properly before the court under the standard of Rule 12(b)(6). See ELM Ret. Ctr., LP v. Callaway , 226 Ariz. 287, 289, ¶ 7, 246 P.3d 938, 940 (App. 2010) (holding that "even if a document is not attached to the complaint, if it is central to the claim, the court may consider it without converting a motion to dismiss to a motion for summary judgment"); see also Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC , 224 Ariz. 60, 64, ¶ 14, 226 P.3d 1046, 1050 (App. 2010) (holding that it is appropriate under Rule 12(b)(6) to consider a "document that is central to the complaint" but was not appended to the complaint).
¶ 13 Second, Dunn's argument that the integration clause within the Separation Agreement superseded the Purchase Agreement is not supported by Arizona law or substantial extra-jurisdictional authority regarding integration clauses.
¶ 14 Arizona has adopted the Restatement (Second) of Contracts § 213 (1981) as the "general rule of contract law" regarding integration clauses. Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 392-93, 682 P.2d 388, 397-98 (1984). Pursuant to the Restatement, even a completely integrated agreement supersedes only prior agreements that are "within [the] scope" of the new contract. Restatement (Second) of Contracts § 213(2). The commentary to the Restatement provides additional explanation:
Scope of a completely integrated agreement . Where the parties have adopted a writing as a complete and exclusive statement of the terms of the agreement, even consistent additional terms are superseded. See § 216. But there may still be a separate agreement between the same parties which is not affected. To apply the rule of Subsection (2) the court in addition to determining that there is an integrated agreement and that it is completely integrated, must determine that the asserted prior agreement is within the scope of the integrated agreement. Those determinations are made in accordance with all relevant evidence, and require interpretation both of the integrated agreement and of the prior agreement.
Restatement (Second) of Contracts § 213 cmt. c (emphasis added).
¶ 15 Thus, to determine whether the Separation Agreement was intended to supersede the LOT and the Purchase Agreement, we must look to "surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like ... to determine the parties' intent with regard to integration of the agreement...." Darner Motor Sales, Inc. , 140 Ariz. at 393, 682 P.2d at 798. Dunn urges that by its terms, the Separation Agreement controls because of the integration clause's broad language.[2] Contrary to this argument, a fair reading of the Separation Agreement, the Second Employment Agreement, the LOT, and the Purchase Agreement does not show that the Separation Agreement was intended to supersede all prior agreements involving all of the transactions between the parties.
¶ 16 The preamble to the Separation Agreement entered into between Dunn and FastMed provides an explicit statement of its intended scope, i.e. , "the settlement of matters relating to the end of your employment with FastMed Urgent Care, P.C., ...." Moreover, the Separation Agreement expressly refers to and incorporates terms and provisions from the Second Employment Agreement but does not address either the LOT or the Purchase Agreement. By contrast, the LOT expressly relates to Dunn's sale of his ownership interest in Urgent Cares pursuant to the Purchase Agreement. The LOT served to qualify Dunn and other such "Interestholders" in Urgent Cares to receive their proportionate consideration upon the closing of the Purchase Agreement transaction. Under these circumstances, it is a bridge too far to find that an agreement to terminate employment was also intended to supersede a $1,000,000 agreement to sell an *441 interest in a company, much less the $200,000,000 agreement to sell the entire business. See State ex rel. Goddard v. R.J. Reynolds Tobacco Co. , 206 Ariz. 117, 120, ¶ 13, 75 P.3d 1075, 1078 (App. 2003) (noting that a preamble that expresses reasons for an agreement is properly considered in construing the parties' intent); see also Smith v. Neely , 93 Ariz. 291, 294, 380 P.2d 148 (1963) (noting that the intent of the parties is "[t]he heart of the matter" in determining whether a new agreement supersedes a prior agreement).
¶ 17 Because the LOT, Purchase Agreement, and Separation Agreement did not have the same scope, the circumstances do not support Dunn's contention that the Separation Agreement was intended to supersede the material terms of the LOT and Purchase Agreement.
¶ 18 That the LOT, Purchase Agreement, and Separation Agreement each contain non-competition and forum-selection provisions does not change this analysis. The context of these provisions in the various agreements demonstrates their differing scopes. The Separation Agreement, for example, provides that Dunn would be paid six months' severance pay and receive other benefits "in lieu of, and [to] supersede" other payments and benefits provided within his Second Employment Agreement. In contrast, the LOT provided that Dunn, as an "Interestholder" in Urgent Cares, would receive consideration for his ownership interest upon the closing of the Purchase Agreement transaction. Stated simply, the LOT established obligations related to the purchase transaction, and the Separation Agreement defined post-employment obligations. Despite their similar terms, the agreements have a different scope and each is independently enforceable. See Perricone v. Perricone , 292 Conn. 187, 972 A.2d 666, 674 (2009) (finding that a comprehensive integration provision in a separation agreement did not supersede a prior confidentiality agreement because "the relevant subject matter of the separation agreement was the division of property between the parties, while the subject matter of the confidentiality agreement was the disclosure of information concerning the parties' property and the parties themselves"); W.R. Millar Co. v. UCM Corp. , 419 N.W.2d 852, 855 (Minn. App. 1988) (finding that an express integration clause in a new contract did not supersede a forum-selection clause in a prior contract because the contracts covered different subject matters).
¶ 19 Similarly, the LOT makes no mention of "retain[ing] Dunn" as an employee or the Second Employment Agreement. The restrictive covenant agreed upon within the LOT runs from the closing of the Purchase Agreement transaction, regardless of any continued employment. In contrast, the Separation Agreement incorporates the Second Employment Agreement's six-month non-competition clause, measured from the termination from Dunn's employment. Had Dunn's employment continued, the Second Employment Agreement's restrictive covenant could have extended beyond the LOT's five-year non-competition term. Thus, the LOT relates only to the Purchase Agreement and the terms under which Dunn would receive "all amounts payable to [him] as an Interestholder as a result of the Merger." Nothing in the Separation Agreement evidences an intent to address anything beyond claims related to Dunn's employment, and, therefore, does not support the proposition that the parties intended to supplant the Purchase Agreement or the LOT. In such a situation, we cannot find that the employment-related agreements were intended to supersede the transaction-related agreements. See Childress Buick Co. v. O'Connell , 198 Ariz. 454, 456, ¶¶ 9-10, 11 P.3d 413, 415 (App. 2000) (noting that two complementary and substantially contemporaneous documents determined the nature of the transaction at issue as neither document standing alone contained all provisions necessary to the transaction); Realty Assocs. of Sedona v. Valley Nat'l Bank of Ariz. , 153 Ariz. 514, 519, 738 P.2d 1121, 1126 (App. 1986) (noting that the "cardinal rule of construction" is that each section of an agreement must be read in relation, if not harmony, to all parts of the writing).
¶ 20 Moreover, the fact that the only parties to the Separation Agreement were Dunn and FastMed-and did not include the other parties to the transaction agreements-provides further support for the conclusion that the Separation Agreement was *442 not intended to supersede the LOT or the Purchase Agreement. Dunn concedes that "the Comvest entities and the FastMed Merger Sub" are not parties to the Separation Agreement, but argues that the pertinent parties to the LOT and Purchase Agreement are either parties or third-party beneficiaries to the Separation Agreement. In this context, we fail to see how third-party designation supports Dunn's position. "[T]he third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party-not the other way around." Mendez v. Hampton Court Nursing Ctr., LLC , 203 So.3d 146, 149 (Fla. 2016). Had the parties intended the Separation Agreement to supersede the Purchase Agreement and the LOT, the parties would be identical. See Suciu v. AMFAC Distrib. Corp. , 138 Ariz. 514, 519, 675 P.2d 1333, 1338 (App. 1983) (rejecting an assertion that a third-party beneficiary "is considered a party" to a contract for purposes of determining whether a written agreement superseded a separate oral contact); see also Fish v. Tandy Corp. , 948 S.W.2d 886, 899 (Tex. App. 1997) ("In the present case, as a matter of law, the letter agreement and the distribution agreement cannot merge because the two agreements are between different parties.").
¶ 21 Accordingly, the superior court did not err in finding that the integration clause in the Separation Agreement did not void the forum-selection provision of the Purchase Agreement.
B. Dunn's Complaint Was Properly Dismissed Pursuant to the Forum-Selection Provision Contained Within the Purchase Agreement
¶ 22 We review de novo the enforceability of a forum-selection clause because it is a legal determination involving contract interpretation and considerations of unconscionability and fairness. Bennett v. Appaloosa Horse Club , 201 Ariz. 372, 375, ¶ 11, 35 P.3d 426, 429 (App. 2001). A party challenging a forum-selection clause bears the burden of showing its unenforceability; such a clause will be enforced if doing so is reasonable at the time of litigation and does not deprive a litigant of his or her day in court. Societe Jean Nicolas Et Fils v. Mousseux , 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979).
¶ 23 The superior court properly decided that Dunn must bring his Complaint in Delaware. Because the parties' forum-selection clause applies to any action in law or equity and does not except negligence or fraud-based claims, none of Dunn's claims "lie beyond the scope" of the agreements' forum-selection provisions. Bennett , 201 Ariz. at 377, ¶ 24, 35 P.3d at 431. Moreover, as the superior court noted, the parties to these agreements "were sophisticated[;] ... [n]either [ ] had an unfair bargaining position, and both [ ] were represented by counsel." See Pinnacle Peak Developers v. TRW Inv. Corp. , 129 Ariz. 385, 392-93, 631 P.2d 540, 547-48 (App. 1980) (holding that summary judgment and the exclusion of parol evidence was appropriate under the circumstances and facts of the case where the parties to the agreement were experienced in business transactions and the transaction was "relatively substantial and sophisticated").
¶ 24 Though Dunn generally claims that he was unable to negotiate or refuse the terms of the LOT, his specific complaints were tied to the non-competition provisions.[3] Moreover, after the merger, Dunn entered into an essentially identical forum-selection provision in the Second Employment Agreement. Throughout the litigation in the superior court, Dunn relied upon his supersession argument, which we have herein rejected. Because Dunn did not argue in the superior court that the forum-selection clause was the result of unfair bargaining or fraud, or so unreasonable as to deprive him of his day in court, we will not consider those arguments here. See Sparks v. Republic Nat'l Life Ins. Co. , 132 Ariz. 529, 538-39, 647 P.2d 1127, 1136-37 (1982) (noting that matters not raised within the superior court are properly not considered on appeal).
¶ 25 Accordingly, we affirm the superior court's order of dismissal and award Appellees their reasonable attorneys' fees and taxable *443 costs on appeal. A.R.S. §§ 12-341 and 12-341.01 ; ARCAP 21(a).
CONCLUSION
¶ 26 For the abovementioned reasons, we affirm.

Even if we lacked appellate jurisdiction, this court could elect to review the dismissal by exercising special action jurisdiction because Dunn has no adequate remedy by appeal. See Danielson v. Evans , 201 Ariz. 401, 411, ¶ 35, 36 P.3d 749, 759 (App. 2001) (finding appellate jurisdiction lacking, and sua sponte accepting special action jurisdiction); A.R.S. § 12-120.21(A)(4) (providing that a court may assume special action jurisdiction "without regard to its appellate jurisdiction").

The integration clause in the Separation Agreement provides as follows:
Entire Agreement. This Separation Agreement constitutes the full understanding and entire agreement between you and the Company and, when effective, supersedes any other agreements of any kind, whether oral or written, formal or informal. You represent and acknowledge that in signing this Separation Agreement, you have not relied upon any representation, warranty, or statement not set forth in this Separation Agreement.

Because we address only the enforceability of the forum-selection provision in the Purchase Agreement, applicable to Dunn via the LOT, we need not address Dunn's other arguments that the LOT's non-competition provision was fraudulently induced, invalid, or unenforceable.